Frank T. TRAINER

v.

PHILADELPHIA NATIONAL BANK.

Civ. A. No. 79–3882.

United States District Court,
E. D. Pennsylvania.

March 31, 1982.

Gerald Wahl, Detroit, Mich., Mark Turetsky, Norristown, Pa., for plaintiff.

Arthur R. Littleton, John Kopesky, Philadelphia, Pa., for defendant.

## OPINION

LOUIS H. POLLAK, District Judge.

Plaintiff Frank Trainer ("Trainer") brought this action to recover damages, claiming that the defendant, Philadelphia National Bank (the "Bank") had, in terminating his employment, discriminated against him on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (ADEA).[1] The trial of plaintiff's claim was bifurcated pursuant to an agreement of counsel and trial on the issue of liability commenced before an eight-person jury on August 17, 1981. At the close of plaintiff's evidence and again at the close of all evidence, the defendant moved pursuant to Federal Rule of Civil Procedure 50(a) for a directed verdict and the court in both instances reserved its decision on the motions. Following the trial, the jury returned a verdict for plaintiff, finding the Bank liable under the ADEA. The defendant has moved pursuant to Federal Rules of Civil Procedure 50(b) and 59 for judgment notwithstanding the verdict and, alternatively, for a new trial.

At the outset, a brief review of the basic outlines of Trainer's tenure with the Bank is necessary. Trainer was employed by the Bank from May 16, 1955 until May 1, 1979 —the date of his discharge. In 1968, Trainer was promoted to banking officer status and served as the branch manager at the Trooper Branch office. Trainer became manager in December 1970 of a newly opened branch at Village Green, located in the Bank's Southwestern Region. During the period from 1970 to 1976, while Trainer continued to manage the Village Green branch, he received periodic salary increases and his job performance was generally considered to be good, according to the Bank's employee evaluation reports and the audit reports for his branch.

In April 1976, John Rusnak was named Regional Vice-President for the Bank's Southwestern Region. After a period of exposure to the region, Mr. Rusnak decided upon several assignment changes for various management personnel within the region. Rusnak planned to reassign Trainer to the Primos-Secane branch and assign

---

1. Plaintiff's initial complaint had also included pendent state-law claims, but these were voluntarily dismissed with prejudice by stipulation at the start of trial.

Richard Hood, another Bank employee, to the Village Green branch. After learning of the Bank's proposed transfer, Trainer was decidedly dissatisfied with the new assignment and, at least in the view of his superiors, his conduct opposing the planned reassignment disrupted operations at the Village Green branch.

Ultimately, Mr. Hood was assigned to the Primos-Secane branch; another bank employee, Mary Davis, replaced Trainer as bank manager at Village Green; and Trainer was reassigned as a "floater." In this capacity, he moved around to various branch offices in different regions, providing assistance to those offices which were short-handed or substituting for employees who were on vacation. This arrangement continued until September 1978. Trainer's status as a banking officer was maintained; he was, however, only occasionally performing duties normally performed by an officer. Apparently, because of Trainer's "floater" status, the Bank no longer provided plaintiff with the same formal evaluations of his job performance after 1976 that he had been receiving, although his supervisors did discuss his performance with him informally during the period from his reassignment to "floater" status in 1976 until his termination in 1979.

Trainer was still officially assigned to the Southwestern region when Mary Louise Lilius replaced John Rusnak as Regional Vice President for that region. In order to determine whether Trainer's probationary "floater" status should be ended and whether he should be assigned to some permanent position within the Bank, Ms. Lilius decided to assign Trainer on a temporary basis to the Bank's Bankcard Sales Department—an assignment which was to last for approximately six months. During the two-year period in which Trainer had served as a floater, several reports of unsatisfactory performance had been filed by supervisors for whom he worked. In describing to Trainer the Bankcard Sales assignment, Ms. Lilius recited the problems with his recent record and explained that the new assignment was to give him a fresh start and that, therefore, he was expected to turn in a strong performance.

Trainer began work as a Bankcard Salesman in September, 1978. After a period of evaluation, the Bank decided in April, 1979, to terminate Trainer's employment, citing his failure to perform in the temporary Bankcard assignment up to expectations, his performance problems as a floater, and certain irregularities which had been discovered concerning his management of the Village Green branch. Trainer's discharge became effective on May 1, 1979.

 Generally, in considering a motion for judgment notwithstanding the verdict, a trial court must view the evidence in the light most favorable to the party against whom the motion is made and must give that party the benefit of all reasonable inferences. And in determining whether there is sufficient evidence to raise a question of fact for the jury, a trial court may not weigh the evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury. If the evidence is such that reasonable minds may reach different conclusions, then the jury's verdict must be left undisturbed. Nevertheless, the federal courts do not follow the rule that a "scintilla of evidence" is enough to survive a motion for judgment notwithstanding the verdict. The proper question is not whether there is literally no evidence supporting the party against whom the motion is made but whether there is evidence upon which the jury could properly find a verdict for that party. *See Patzig v. O'Neil*, 577 F.2d 841, 846 (3d Cir. 1978); *Morelock v. NCR Corp.*, 586 F.2d 1096, 1104–05 (6th Cir. 1978); *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir. 1970).

 As stated earlier, Trainer's claim is brought under the Age Discrimination in Employment Act which prohibits an employer from discharging an employee "because of [his] age." 29 U.S.C. § 623(a)(1). Thus, in order to recover under the ADEA, a plaintiff has the ultimate burden of proving that his age was "a determining factor" in the decision to discharge him. *See Smithers v. Bailar*, 629 F.2d 892, 896–98 (3d

Cir. 1980); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1009 (1st Cir. 1979).

■ In the absence of any direct evidence that age was a factor in the Bank's decision to terminate him, Trainer undertook at trial to present a *prima facie* case of age discrimination. Under this approach, a plaintiff sets out to establish the general circumstances under which he was discharged in order to justify an inference of illegal discrimination. *See Stanojev v. Ebasco Services, Inc.*, 643 F.2d 914, 919 (2d Cir. 1981). This method of proving a *prima facie* case under the ADEA is borrowed from doctrine developed under Title VII of the Civil Rights Act of 1964. Because of the similarities of purpose and language in these two statutes, courts have held that the order and allocation of burdens of proof which govern cases arising under Title VII are generally applicable to age discrimination cases. *See Smithers v. Bailar, supra*, 629 F.2d at 894. Thus, under the ADEA and Title VII, the presentation of proof follows three procedural steps:

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reasons for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (citations omitted).

■ In cases where the plaintiff alleges that his employer's decision to discharge him was motivated by age discrimination, he must prove the following four elements to establish a *prima facie* case:

1. that he was a member of the statutorily protected age group—i.e., between 40 and 70;

2. that he was discharged;

3. that he was qualified for the position he held;

and

4. that after his discharge, the position remained open and was filled by someone with similar qualifications.

*See Loeb v. Textron*, 600 F.2d 1003, 1013 (1st Cir. 1979); *Stanojev v. Ebasco Services, supra*, 643 F.2d at 919–20.

The focus of the dispute between the parties centers on two issues: (a) whether plaintiff met his initial burden of establishing a *prima facie* case—in particular, where there was any circumstantial evidence of age discrimination such as replacement of Trainer with a younger employee; and (b) assuming plaintiff established a *prima facie* case and that defendant came forward with a legitimate non-discriminatory explanation for the discharge, whether plaintiff met his ultimate burden of showing that the defendant's proffered explanation was merely a pretext for discrimination on the basis of the unlawful criterion of age.

As to the first question concerning plaintiff's demonstration of a *prima facie* case, it appears to be undisputed that plaintiff had established the first two factors delineated in *Loeb v. Textron*—that he was within the protected age group; and that he was involuntarily discharged. *See Loeb v. Textron, supra*, 600 F.2d at 1013, *Stanojev v. Ebasco, supra*, 643 F.2d at 919–20. However, the parties disagree over whether plaintiff was able to establish sufficient circumstantial evidence to raise an inference that the Bank's decision to terminate Trainer was motivated in part by his age. Contending that the testimony at trial provided the jury with a reasonable basis for making such an inference, Trainer argues that the evidence reveals that "his employer sought a replacement with qualifications similar to his own," *Loeb v. Textron, supra*, 600 F.2d at 1013, to perform the same work after he left the Bank. Specifically, Trainer insists that after his discharge on May 1, 1979, he was replaced by either Gary Lighter or William Briggs, each of whom is younger

than Trainer. In response, defendant observes that Trainer's position at the time of his discharge was a provisional one, established for a limited period solely to provide a ground of experience on which to judge plaintiff's performance, and therefore he was not replaced by anyone.

As described earlier, Trainer was assigned after 1976 to work as a "floater," holding a variety of temporary positions at various branches. In September 1978, Mary Lou Lilius, the then Regional Vice President for the Southwestern Region, decided to assign Trainer temporarily to a position in the Bankcard Sales Department under Richard Schmalbach. According to Lilius's uncontradicted testimony, this was to provide Trainer with a "fresh start" so that his performance could be evaluated. Lilius felt unable to judge Trainer's ability and she was aware that the district managers under her direction did not want Trainer working in their departments. When Trainer began working in Bankcard Sales, Schmalbach and Lilius explained the experimental, temporary character of the position. Indeed, according to Schmalbach's uncontradicted testimony, when Trainer arrived in September 1978, a full complement of Bankcard salesmen was already in place, and Trainer was not paid out of Schmalbach's departmental budget but rather remained on the regional payroll under Lilius. Thus, according to Schmalbach, when Trainer was discharged in May 1979, his departure did not create a vacancy within the department. *See* N.T. at 10, Aug. 19, 1981.

In January 1979, a permanent member of Schmalbach's sales force, Mr. Blackman, was discharged, thereby creating a vacancy which was filled in June of that year when Gary Lightner was hired as a junior sales representative. Schmalbach testified that Lightner was not a replacement for Trainer since Trainer was only on a temporary assignment to Schmalbach's department. N.T. at 16–20. Moreover, William Briggs could not properly be regarded as a replacement for Trainer since he was already working in the same capacity as Trainer two months *prior* to plaintiff's discharge. Therefore, the jury had no proper basis for an inference that Trainer was discharged because of his age. The situation in this case is similar to that described by the Second Circuit in *Stanojev v. Ebasco*, 643 F.2d at 920: "No inference that the position from which [plaintiff] was dismissed might be filled by a younger person arises if there was no longer any position to fill."

In addition, the evidence concerning the discharge of similarly situated employees on which plaintiff relies also does not support an inference of age-based discrimination. Plaintiff introduced testimony concerning two individuals—Messrs. Tracy and Barr—but these clearly did not raise a significant inference that PNB was engaged in a pattern or practice of age discrimination. These instances demonstrate only that two long-term employees within the protected age group were discharged and were replaced by individuals who were younger than Tracy and Barr but who were also within the protected age group. Moreover, this evidence reflects a statistically insubstantial portion of the hundreds of comparable PNB employees, and plaintiff failed in any significant sense to rebut defendant's evidence that Tracy and Barr were discharged not because of their age but rather because of poor job performance. N.T. at 75, 77–78, 85–87 (Aug. 20, 1981). However, even assuming that plaintiff was able to establish his *prima facie* case under *Loeb v. Textron*, it is clear that he failed to carry his ultimate burden of establishing age-based discrimination after PNB had come forward with a legitimate, non-discriminatory reason for Trainer's discharge. It is clear that PNB met its burden of producing some evidence that the termination of Trainer was motivated not by age discrimination, but rather by the legitimate basis of unsatisfactory job performance. Under the allocation of burdens of proof set forth by the Court in *Texas Dept. of Community Affairs v. Burdine, supra*, defendant's demonstration operated to rebut the presumption of discrimination raised by plaintiff's *prima facie* case, thereby shifting to plaintiff the ultimate burden of showing defendant's proffered reason to be a pretext for age discrimination. 101 S.Ct. at 1094–95.

In an effort to show such a pretext, Trainer focused on (a) his generally good record prior to the 1976 transfer to floater status; (b) audit reports during his tenure as manager which reflected few major problems at the Village Green branch; (c) testimony by Anthony Pellegrino which suggested that Trainer's superior, Mr. Roach, had told those responsible for reviewing Trainer's performance to submit unfavorable comments; and (d) his performance as Bankcard salesman which was generally comparable to other long-time salesmen in that department.

However, as defendant points out, the difficulty for plaintiff is that none of this evidence suggests that age discrimination was the true basis for PNB's actions, nor does it rebut the evidence of poor performance marshalled by defendant. *Cf. Douglas v. Anderson*, 656 F.2d 528 (9th Cir. 1981); *Bilotti v. Franklin Mint, Inc.*, No. 80–2917, slip op. at 13–14 & n.2 (E.D.Pa. Nov. 20, 1981); *Havelick v. Julius Wile Sons & Co., Inc.*, 445 F.Supp. 919 (S.D.N.Y.1978). With respect to plaintiff's record at Village Green, defendant produced a list of 22 violations of bank procedures uncovered by Mary Davis—Trainer's replacement as manager—which were permitted under Trainer's management. And the Bank noted that the report by Ms. Davis indicated some flaws concerning irregular loan procedures. However, plaintiff never attempted to rebut directly this evidence; in fact, he acknowledged most of the irregularities but suggested that they were not important or that he had not independently checked the work of his staff which was responsible for these details. *See* N.T. at 49–60 (Aug. 21, 1981); N.T. at 45–52, 61–69 (Aug. 24, 1981). As to the Pellegrino testimony, here again the evidence does nothing to establish that Trainer was terminated because of his age. The statement by Roach reported by Pellegrino was only uncorroborated hearsay which did not refer in any way to Trainer's age, and since Mr. Roach left the Bank seventeen months before plaintiff's termination, it is difficult to attribute responsibility for Trainer's discharge to these statements. Finally, while plaintiff's record as a Bankcard salesman was comparable to some other salesmen in the group, this in itself does not establish that the Bank's reason was a pretext. It was clear that the Bank expected Trainer to do particularly well in this assignment and since his performance clearly was not markedly superior to the other salesmen, it suggests merely that the Bank's evaluation of him may not have been the same as the jury's assessment, not that age discrimination motivated the discharge.

■ While defendant's handling of Trainer was perhaps not a model of good employee relations, the dilemma for plaintiff is that none of the evidence produced at trial reasonably suggests that the Bank was motivated by age discrimination when it decided to discharge Trainer. There was no effective evidence—direct or circumstantial—that members of the protected age group were dismissed on the basis of their age. Nor was there any effective showing that plaintiff was replaced, either by a younger employee or by any employee. In short, the jury could not properly find on the evidence before it that PNB was liable.

The jury may well have felt that Trainer was not treated with complete fairness by the Bank, but that is not the standard set forth in the ADEA against which defendant's conduct must be measured. Instead, to find for plaintiff, the jury had to find— and it was so instructed—that age was a "determining factor" in the decision to discharge him. *Loeb v. Textron, supra.* Plaintiff failed to produce such evidence. Therefore the only conclusion that the jury was entitled to draw, within the parameters of the ADEA, was that defendant did not intentionally discriminate against plaintiff on the basis of his age.

Accordingly, defendant's motion for judgment notwithstanding the verdict will be granted. Pursuant to Federal Rule of Civil Procedure 50(c)(1), I will also conditionally grant defendant's alternative motion for a new trial on the ground that the verdict was against the weight of the evidence.