Helen CHRISTOFOROU, Plaintiff,

v.

RYDER TRUCK RENTAL, INC., and George Gerstein, Defendants.

No. 85 Civ. 4538 (CBM).

United States District Court, S.D. New York.

Sept. 2, 1987.

---

Barbara E. Hoppmann, Brooklyn, N.Y., for plaintiff.

Epstein Becker Borsody & Green, P.C. by Amy Beech, Ronald M. Green, Steven P. Seltzer, New York City, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MOTLEY, District Judge.

Plaintiff, Helen Christoforou, was an employee of Ryder Truck Rental, Inc. at one

of its Manhattan rental offices from 1980 until early 1983, at which time she was fired. Plaintiff has brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, claiming that her termination was the product of illegal sexual harassment. Plaintiff also contends that the "hostile environment" of her workplace due to the alleged sexual harassment supplies an independent basis for Title VII liability.[1]

After a four day bench trial and full consideration of both side's post-trial submissions in this difficult case, the court concludes that plaintiff has not met her burden of proving that she was the victim of illegal sex discrimination. Defendants' abrupt decision to terminate plaintiff for insubordination may not have been particularly reasonable or fair, and there clearly was some history of sexual tension between plaintiff and the supervisor who fired her, George Gerstein. This is not enough, however, under all the circumstances of the present case for plaintiff to prevail under either a hostile environment or a *quid pro quo* theory of illegal sex discrimination. The arguable sexual harassment to which plaintiff was subjected was not so pervasive or abusive as to constitute, in and of itself, a "hostile environment" in violation of Title VII. As for plaintiff's termination, she has failed to prove that her employer's proffered legal motivations for the action were merely pretextual, or that her supervisor's desire for sexual retaliation was in any way a deciding factor. Accordingly, the court must find for defendants.

Pursuant to Fed.R.Civ.P. 52(a), the court's findings of fact and conclusions of law are as follows.

*Findings of Fact*

Ryder Truck Rental is a corporation engaged in the business of leasing and renting trucks to both commercial enterprises and individuals throughout the United States. Plaintiff began her employment with Ryder in April 1980 at the company's Manhattan rental office located on the far West Side of Manhattan at 624 West 30th Street. She remained at this location, which was part of the company's White Plains District, during her entire time with Ryder.

Plaintiff was initially hired as an hourly employee. Her duties included clerical work, ensuring that rental vehicles were clean and ready for customers and dealing with mechanics. She also dealt with the rental customers themselves. After somewhat less than two years with Ryder, in February 1982, plaintiff was promoted from an hourly position to the salaried position of Rental Account Manager or Rental Representative at the Manhattan location. She continued to do similar work as before, but with slightly more pay and other benefits and slightly greater responsibility. In contrast to the hourly position, however, which had never required Saturday work, the salaried position required that plaintiff work a six day week as needed and with no additional overtime. Plaintiff remained in this salaried position as Rental Representative for about a year until she was fired in February 1983. She was earning about $15,000 annually at this time.

Throughout the course of her nearly three years of employment with Ryder, plaintiff's performance was generally satisfactory, although complaints about lateness and attendance were a continuous theme. In the fall of 1982, however, about half a year after plaintiff had been promoted from hourly to salaried status, her performance ratings began to deteriorate markedly. On her September 1982 evaluation, which was written by John Lore, plaintiff's immediate supervisor, plaintiff received a rating that was significantly lower than her previous ones. She was rated 2.0 on a scale of 1 (unsatisfactory) through 5 (outstanding). This score was defined as "generally adequate—meets most job objectives or requirements; needs improvement in some." As with her earlier evaluations at Ryder, plaintiff agreed that this one was accurate and fair. Furthermore, at trial plaintiff testified that except

---

1. The court previously dismissed plaintiff's state law and federal constitutional claims, as well as her claims against defendant John Lore, a Ryder Truck Rental employee.

for the day she was fired, Lore had always been a fair and supportive supervisor.

As part of the September 1982 evaluation, Lore advised plaintiff that she needed to improve in the areas of punctuality and attendance, and that she should not continue to wear blue jeans in contravention of company policy. Even prior to this September appraisal, Lore had notified plaintiff of difficulties he was having with her performance, specifically her punctuality and dress and her sometimes argumentative manner.

After plaintiff's performance worsened in the weeks following this evaluation, Lore notified plaintiff by memo dated October 6, 1982 that her continued "glaring problems" with punctuality, attendance, and certain aspects of customer relations and contract preparation, warranted her attention. This was followed by a November 3, 1982 memo from George Gerstein, the District Manager, who was a notch above Lore in the corporate hierarchy and who had occasion to observe plaintiff's work when he visited the New York Office. Gerstein enumerated various incidents which he believed were reflective of plaintiff's poor work attitude and performance; for example, bickering with customers and lateness, and stated that in light of her previous performance appraisal and her October 6 memo from Lore, she should consider his memo a "final attempt" to encourage her conformance with proper office policies.

Finally, on November 17, 1982, John Lore wrote plaintiff another memo pointing out several serious problems with her performance, including the acceptance of a non-certified, unapproved check that subsequently bounced, and continued violations of the "no jeans" dress rule. Lore was particularly disconcerted that after he had reiterated the "no jeans" policy to which plaintiff objected, she went above him to Gerstein and unsuccessfully asked Gerstein to back her on this issue. Lore advised in the memo that plaintiff should "amend this situation as soon as possible so as to avoid further disciplinary action."

Plaintiff's job problems and negative evaluations are not surprising considering plaintiff's view that many of Ryder's established policies—particularly those concerning dress and Saturday work—were unfair or unreasonable, and that she should not be required to comply with them. Plaintiff expressed her continued disagreement with company policies at trial. Furthermore, during the last months of her employment with Ryder, plaintiff had expressed her unhappiness with the company to a coworker, Tony Hibbert, who had suggested that maybe she should consider looking for another job.

On February 2, 1983, plaintiff was abruptly fired after a dispute with District Manager George Gerstein about Saturday work schedules. Saturday staffing of the rental office was done on an informal rotating system with supervisors sharing the workload. Gerstein entered the general office area where plaintiff and two co-workers were situated and announced that someone would have to work for him the following Saturday because he had plans with his family. Plaintiff, who was wary that the remark was addressed to her, spoke out saying it was unfair to ask her to work an additional Saturday because she had worked the two previous Saturdays. Mr. Lore, plaintiff's immediate supervisor, then called plaintiff into his office and asked her if she would be able to work the following Saturday. When plaintiff replied that Ryder did not treat its employees fairly, that she had already worked the previous two weekends, and that she thought it was improper for Gerstein to ask to switch Saturdays for merely personal reasons, Lore explained that plaintiff was not entitled to have off the following Saturday simply because she had already worked two in a row. Gerstein, who was also in Lore's office at this point, exclaimed angrily that, indeed, he could make plaintiff work every Saturday if he wished. Plaintiff responded by saying that she was quitting the job and was giving her two weeks notice. More angry than ever at what he considered to be plaintiff's insubordination, Gerstein told her to forget the two weeks notice, she was fired.

Plaintiff's termination was independently upheld a few days later by Gaylon Morris, a White Plains supervisor a rank above Gerstein. This was done at the Manhattan office at a conference attended by plaintiff, Gerstein, Lore, and Morris. Plaintiff requested that she be allowed to withdraw her resignation and proposed a transfer to a different location. Morris decided, however, after reviewing the incident together with plaintiff's marginal and increasingly troubled personnel file, to process plaintiff's termination. The warning and probation period ordinarily required by the Ryder personnel manual for involuntary discharges were not applicable in the present case. Company policy allowed for immediate discharge in the case of serious disciplinary problems, including fights and altercations.

Plaintiff claims that the reason she was fired was not for insubordination or because of her deteriorating performance at work, or even due to the merely general volatility of George Gerstein. Plaintiff claims that she was fired because George Gerstein wanted to punish her for resisting his sexual advances. After carefully reviewing plaintiff's somewhat vague contentions of sexual harassment, it is certainly clear to the court that there was an element of sexual tension in plaintiff's relationship with Gerstein. There is also little doubt that over the year and a half of their acquaintance at Ryder, Gerstein had shown some unwelcome and not especially gentlemanly interest in plaintiff. The court finds, however, that Gerstein's behavior was simply not so severe or pervasive as to create an abusive working environment *per se*, and that furthermore, plaintiff's firing was caused not by her resistance to Gerstein's sexual advances but by her insubordination in combination with her deteriorating job performance.

Plaintiff first met George Gerstein in 1981 when he was the One-Way Dealer Manager for the Manhattan location where plaintiff worked, as well as for approximately 35 to 45 other Ryder Truck Rental offices. Because plaintiff and others in her position had certain limited duties with respect to One-Way rentals and inventory, Gerstein would check with her and others at the Manhattan office when he visited this location. As One-Way Manager for a large number of rental offices, Gerstein spent only a few hours at the Manhattan location once every two weeks and had only a few minutes of direct contact, if any, with plaintiff during each visit. Furthermore, in his position as One-Way Manager, Gerstein had no staff or subordinate personnel at the Manhattan location. Plaintiff neither reported to Gerstein nor did he evaluate or supervise plaintiff's performance during this time.

In June 1982, Gerstein was promoted to District Rental Manager for the White Plains District. Gerstein was then responsible for all locations within this district—Manhattan, White Plains, the Bronx, and Newburgh. He continued to spend only a small proportion of his time in the Manhattan location. Although Gerstein was not plaintiff's direct supervisor after his promotion, he did have supervisory authority over her. John Lore, who was Gerstein's subordinate, was plaintiff's direct supervisor at this time.

Plaintiff's testimony about Gerstein's alleged sexual harassment during the time she knew him at Ryder consisted mainly of assertions that he had been "personal" with her, tried to "socialize" with her, that he had touched her "sexually" and had pestered her and asked her out on dates. When asked to pin down these allegations and explain more fully what she meant by these rather vague terms, plaintiff recounted the following scattered incidents.

Plaintiff testified that the first instance of sexual harassment by Gerstein took place some time in mid–1981 when Gerstein gave her a ride home to Brooklyn where he was driving to visit his fiance. It was a common practice, because of the remote, waterfront location of the Manhattan office, for management to give rides to other employees. Plaintiff testified that during the drive as they were nearing her home, Gerstein made "personal remarks" to her, i.e., asked her if she was involved with anyone. When she said she already was, he responded suggestively that she should

be more modern in her attitudes. According to plaintiff, Gerstein put his hand on her thigh and told her that if she would "play with him," he would eventually be in a position at Ryder to help her on the job. Plaintiff claims she became upset, got out of the car, and found her way home by herself. Although Gerstein denied that he had ever propositioned plaintiff in such a manner, the court finds plaintiff's account of this incident to be essentially credible, at least to the extent recounted here. Plaintiff continued, on occasion, to accept rides with Gerstein.

Plaintiff testified that after this one incident in mid–1981, in 1982 Gerstein approached her on four or five occasions in the truck yard of the Manhattan office and placed his hands on her breasts and her behind. According to plaintiff, these incidents occurred in the first half of 1982 at a time when Gerstein was still One-Way Manager and visited the Manhattan location less than once a week and had no supervisory authority over plaintiff. Plaintiff's testimony about these alleged truck yard incidents was extremely vague and unspecific. Furthermore, no witness produced by any party saw any sexual conduct of any kind directed towards the plaintiff while she worked at Ryder. In addition, plaintiff, herself, admits that she never told anyone at work, including co-workers, of these alleged truck yard incidents. While the court might ordinarily attribute such reticence to shyness and embarrassment, in the present case the court finds that plaintiff's failure to tell anyone, including friends, about these incidents, is due to the fact that these incidents never occurred in the manner that plaintiff now claims they did. This conclusion is based not only on plaintiff's demeanor at trial, and the vague and uncorroborated nature of her testimony but also indirectly on the testimony of a former female friend of plaintiff's who unexpectedly turned hostile witness at trial and suggested that she had previously agreed with plaintiff to fabricate testimony about Gerstein's misconduct towards other women. It seems unlikely that if plaintiff had had a girl friend who was close enough to have at one time considered perjuring herself for plaintiff's case, that plaintiff would not have confided in this friend about Gerstein's assaults in the truck yard, if they actually had occurred. Thus, while the court finds it probable that Gerstein's behavior toward plaintiff may on a number of occasions have been obnoxious and suggestive, it does not credit plaintiff's testimony about the four or five instances of fondling in the truck yard.

A third example of sexual harassment by Gerstein cited by plaintiff was his habit of sitting on her desk, using her telephone, or talking with her socially while she was trying to work. Plaintiff, herself, testified that Gerstein also sat on the desks of other rental employees and used their phones. Furthermore, a co-worker of plaintiff's testified that in addition to having a habit of sitting on employees' desks, male and female alike, Gerstein generally had a habit of touching people, including the witness, in a casual gesturing manner. The court finds this impolite and perhaps annoying behavior from a middle level manager was not sexual in nature, was not directed particularly at plaintiff, and did not constitute sexual harassment in any sense.

Plaintiff also claims that in 1982 Gerstein tried to kiss her at a company Christmas party. Plaintiff testified that Gerstein cornered her in the hallway just outside of where the party was occurring, pinned her forcibly to the wall and made lewd remarks. Plaintiff managed to free herself from his grasp and ran outside to the yard to collect herself. Plaintiff claims that she never mentioned this incident to anyone and that none of the approximately 35 people at the party witnessed anything. Plaintiff admits that at the end of the party she accepted a ride with Gerstein, along with two other people.

The court finds as to this Christmas party incident that either it did not occur at all or that it occurred in a fairly innocuous manner that was not as dramatic or upsetting as plaintiff now suggests. The court's finding that plaintiff is at best exaggerating about this incident is influenced by plaintiff's inconsistent testimony about the manner of Gerstein's assault and by the

fact that plaintiff was willing to take a lift in his car after the party was over. Even though there were other people in the car, it seems unlikely that if Gerstein had in fact just attacked her in the violent manner she now describes, plaintiff would have gone in Gerstein's car rather than with some other co-worker or taken a cab. Furthermore, the court finds it difficult to believe, in light of the general popularity of office Christmas party gossip, together with plaintiff's demeanor at trial and her general willingness to speak her mind at work, that plaintiff would not have mentioned or confided this event to at least a friend, if it had actually occurred in the manner she says it did.

The court finds it significant, moreover, that a few months after her termination when plaintiff filed a complaint with the New York State Commission on Human Rights, her claim of sexual harassment consisted only of the following statement: "[O]n February 2, 1983, [the day she was fired] Mr. Gerstein, Manager, touched me in a sexual manner [touching her hair] and I objected to it. On prior occasions Mr. Gerstein sought to take me out, and I refused." If Gerstein had in fact manhandled plaintiff in the way she now claims he did at the Christmas party only a few weeks prior to her termination, it strains belief to think that she would have made no mention of this in her sexual harassment complaint to the Human Rights Commission.

The final episode of alleged sexual harassment enumerated by plaintiff occurred on the morning she was fired by Gerstein in February 1983. Plaintiff claims that earlier that day Gerstein had approached her in the front office area with other employees present, touched her hair, and commenting that it was greasy, asked her whether she had taken a shower and where she had spent the night. The court has no doubt that this incident occurred and that Gerstein intended his remarks to be suggestive and rude.

The court's overall assessment that although there was some sexual tension between plaintiff and Gerstein, it was not as severe or articulated as plaintiff now contends, is supported by plaintiff's own complaints about Gerstein to her supervisors. For example, while the court finds quite credible plaintiff's testimony that in the fall of 1982 she had complained about Gerstein to Lore,[2] plaintiff's complaints were of a vague and general nature, to the effect that Gerstein was bothering her while she worked and that he made personal comments to her. The court finds that plaintiff's statements at her private post-termination conference with Gaylon Morris were similarly vague. After a careful review of plaintiff's remarkably inconsistent testimony about what she told Morris, the court concludes that plaintiff said nothing more to him than that Gerstein had touched her hair on the morning of the firing and that he had been generally annoying around the office by making unwelcome personal remarks. The court finds that plaintiff's vagueness in this regard was not due to shyness but instead to the fact that although plaintiff may have found Gerstein's behavior generally obnoxious, she did not have much in the way of particular incidents about which to complain.

*Conclusions of Law*

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of [the sex] of such individual...." 42 U.S.C. § 2000e–2(a)(1). Forbidden discrimination based on sex includes sexual harassment whether or not it results in tangible economic loss. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

In the present case, plaintiff has asserted two distinct but related types of injury caused by sexual harassment. She claims first of all that even had she not been fired from her job, Gerstein's behavior towards

---

**2.** Notwithstanding plaintiff's mild complaints to Lore about Gerstein, the court remarks that plaintiff's work relationship with Gerstein could not have been as tense as she now claims.

Rather, in light of plaintiff's attempt to garner Gerstein's support in her resistance to Lore on the "no jeans" rule, it seems that she considered him someone she could talk to easily.

her both before and after he was promoted to a supervisory position, created a "hostile environment" in violation of Title VII. For sexual harassment to be actionable under a "hostile environment" theory, a plaintiff must show that the offensive behavior was sufficiently severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 2406, 91 L.Ed.2d 49 (1986) (quoting *Henson v. City of Dundee,* 682 F.2d 897, 904 (11th Cir. 1982)). *See also Katz v. Dole,* 709 F.2d 251, 254-55 (4th Cir.1983); *Bundy v. Jackson,* 641 F.2d 934, 942-46 (D.C.Cir.1981); 29 C.F.R. § 1604.11(a)(3) (1986) (sexual harassment, whether or not it is directly linked to the grant or denial of an economic *quid pro quo* is prohibited by Title VII where "such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.") *Cf. Snell v. Suffolk County,* 782 F.2d 1094, 1103 (2d Cir.1986); *Rogers v. EEOC,* 454 F.2d 234 (5th Cir. 1971), *cert. denied* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (racial or ethnic harassment). Whether an abusive environment sufficient to trigger a plaintiff's right to relief under Title VII exists must be determined from the totality of the circumstances on a case by case basis. 29 CFR § 1604.11(b) (1986). *See also Snell v. Suffolk County,* 782 F.2d 1094, 1103 (2d Cir. 1986); *Henson v. City of Dundee,* 682 F.2d at 904 (11th Cir.1982).

■ In the present case, plaintiff has plainly failed to show, even if every allegation about Gerstein's misconduct were to be fully credited, that the sexual harassment to which she was subjected was so pervasive or abusive as to be actionable in and of itself, and without any further injury. Successful "hostile environment" claims have depended on the existence of a "poisoned" atmosphere, *Bundy v. Jackson,* 641 F.2d 934, 944 (D.C.Cir.1981), where the

individual is required to run "a guantlet of sexual abuse in return for the privilege of being allowed to work." *Henson v. City of Dundee,* 682 F.2d at 902 (11th Cir.1982). In *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), for example, plaintiff claimed she had been compelled by her supervisor to engage in sexual intercourse forty to fifty times, that he fondled her in front of other employees, and that he even forcibly raped her on several occasions. *Meritor* dealt with an extreme situation, obviously, and it is clearly not necessary to prove such outrageous behavior in order to prevail on a hostile environment claim. Nonetheless, to establish a "hostile environment" actionable under Title VII, a plaintiff must prove "more than a few isolated incidents," and cannot rely solely on "casual comments" or trivial events and "sporadic conversation." *Snell v. Suffolk Country,* 782 F.2d at 1103 (2d Cir.1986); *Katz v. Dole,* 709 F.2d at 256 (4th Cir.1983).

In the present case, plaintiff's problems with Gerstein appear to have been quite sporadic and relatively innocuous. Plaintiff had difficulty in coming up with more than three specific incidences of sexual harassment over the course of the approximately a year and a half she knew Gerstein. Moreover, both before and after his June 1982 promotion, Gerstein was responsible for visiting many different locations and, thus, in any event, had only a limited amount of contact with plaintiff. In addition, plaintiff testified that Gerstein's unwanted attentions, though they riled her, did not interfere with her ability to do her job. Although the behavior which would rise to the level of an actionable "hostile environment" cannot be precisely defined, it is clearly more abusive, pervasive, and persistent than what plaintiff has alleged. *See Neville v. Taft Broadcasting Co.,* 42 Fair Empl.Prac.Cas. (BNA) 1314 (W.D.N.Y. 1987) [Available on WESTLAW, DCT database].[3]

---

**3.** Even if the court found that plaintiff had proved a "hostile environment" claim based on the limited sexual harassment to which she was subjected, plaintiff's victory would be essentially academic. It is well established that punitive damages and damages for emotional distress are not allowed under Title VII. Any claim for injunctive relief on plaintiff's hostile environ-

■ Plaintiff's second claim under Title VII is that sexual harassment and hostility caused her tangible injury in the form of being fired from her job. In order to prevail on this theory plaintiff must show that her submission to, or at least sweet and patient endurance of, Gerstein's sexual advances was a *quid pro quo* of her continued employment at Ryder. Plaintiff has a much stronger case on this theory but a difficult one, for it hinges on close factual questions of pretext and causation, as well as on a slippery factual distinction between personality conflict and sexual hostility.

The well known formula for proving a Title VII case of illegal discrimination in hiring, promotion or employment generally, that has been set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), is equally applicable in the somewhat specialized situation of a lawsuit alleging sexual harassment. The plaintiff must first make out a prima facie case by showing that she was fired under circumstances giving rise to an inference of discrimination. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. In order to rebut this initial showing, defendant need do no more than produce some competent evidence of its permissible, non-discriminatory motivations for plaintiff's dismissal. *Id.* at 254–55, 101 S.Ct. at 1094–95. Then, if plaintiff is to prevail on her claim, she must carry the ultimate burden of proving that illegal sex discrimination was a determinative factor in her discharge. This may be done either by an affirmative showing that the employer's decision was a product of illegal discrimination or more indirectly by showing that defendant's proffered explanations for the termination are pretextual and not worthy of belief. *Id.* at 256, 101 S.Ct. at 1095. *See also, e.g., Neville v. Taft Broadcasting Co.*, 42 Fair Empl.Prac.Cas. (BNA) 1314 (W.D.N.Y.1987) [Available on WESTLAW, DCT database]; *Mazzella v. RCA Gobal*

*Communications*, 642 F.Supp. 1531, 1540–41 (S.D.N.Y.1986), *aff'd* 814 F.2d 653 (2d Cir.1987); *Lenihan v. City of New York*, 636 F.Supp. 998, 1008–10 (S.D.N.Y.1985).

■ Plaintiff has made out a prima facie case of disparate treatment due to illegal sex discrimination by showing that she and George Gerstein had at least a history of sexual tension and even mild harassment, that her employment record during the two and a half years she had worked at Ryder, though not superb, was overall satisfactory, and that the immediate circumstances of her discharge were sudden and heated. The burden of making out a prima facie case under Title VII is not an arduous one. *See Sumner v. San Diego Urban League*, 681 F.2d 1140, 1142 (9th Cir.1982); *Sweeney v. Board of Trustees of Keene State College*, 569 F.2d 169, 177 (1st Cir.1978), *vacated on other grounds*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978), *aff'd. on remand*, 604 F.2d 106 (1st Cir.1979). Plaintiff has plainly succeeded in producing evidence that might give rise to a reasonable inference that improper sexual considerations were a deciding factor in her termination.

■ Defendants have met their rebuttal burden of articulating a legitimate cause for plaintiff's firing, however. Plaintiff's refusal to work on Saturday when such an assignment was clearly, if not so reasonably, a management prerogative at Ryder, and plaintiff's angry tender of resignation, supply legitimate explanations for Gerstein's decision to fire her. The additional fact of plaintiff's deteriorating performance through the fall of 1982, that cemented the decision to process her termination several days later, was another perfectly permissible factor for defendants' consideration.

In determining whether the explanations that defendants have offered for plaintiff's dismissal were pretextual, and whether illegal sexual considerations were, indeed, a deciding factor, the court must focus on

---

ment claim would be moot as to plaintiff since she is no longer employed by Ryder and she does not wish to be so employed. *Cf. Bundy v.*

*Jackson*, 641 F.2d 934, 946–48 (D.C.Cir.1981) (guidelines for fashioning appropriate equitable relief for successful hostile environment claim.)

the issue of causation. To meet her burden of proof in a Title VII case, a plaintiff need not show that an illegal factor was the sole motive for the employer's action. She must only show that "but for" the illegal factor, she would not have been treated as she was. *See McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 2580 n. 10, 49 L.Ed.2d 493 (1976); *Mazzella v. RCA Global Communications,* 642 F.Supp. 1531, 1541 (S.D.N.Y.1986), *aff'd* 814 F.2d 653 (2d Cir.1987). Conversely, however, if the evidence establishes that even without the alleged illegal motivations the outcome would have been no different, then plaintiff's Title VII claim must fail.

■ The court concludes that plaintiff's insubordination regarding the Saturday work request and her own emotional tender of resignation, combined with her recent poor work history were in fact the causes for her termination. There is no question that these events occurred, and that they would be factors which might motivate any employer, regardless of the race, sex or creed of his employee, to consider an involuntary dismissal.

Plaintiff has attempted to show that the history of sexual tension between plaintiff and Gerstein and plaintiff's unwillingness to submit to Gerstein's advances or at the very least to endure them cheerfully and flirtatiously, were deciding factors in the termination. While plaintiff has offered sufficient evidence of sexual hostility between plaintiff and Gerstein to establish her prima facie case, this minimal evidence of sexual harassment by Gerstein is insufficient to convince the court that Gerstein's desire for sexual revenge was a determining factor in his or in Ryder's ultimate decision to fire plaintiff.

■ To begin with, in order to prevail on a Title VII claim, not only must the plaintiff show that the offensive conduct was a "but for" cause of her dismissal, she must also ultimately prove that this cause or motivation was an illegal one. In assessing the evidence of sexual harassment and tension that has been offered by plaintiff, it is important to note that although the difference is elusive, there is a crucial difference between personality conflict and sexual harassment. It seems to the court that the tense history between plaintiff and Gerstein was more a matter of the former, which is unpleasant but legal, than the latter, which is despicable and illegal. The law does not require an employer to like his employees, or to conduct himself in a mature or professional manner, or unfortunately, even to behave reasonably and justly when he is peeved. *Benton v. Kroger Co.,* 640 F.Supp. 1317, 1321 (S.D.Tex.1986) ("inference that a boss ... may be crude and not so understanding is not proof of sex harassment"); *Buddle v. Heublein, Inc.,* 613 F.Supp. 491, 492 (S.D.N.Y.1985) (generally overbearing and provocative behavior of supervisor not equivalent to actionable sexual harassment); *Trainer v. Philadelphia National Bank,* 541 F.Supp. 195, 200 (E.D.Pa.1982), *aff'd. memo.* 707 F.2d 1395 (3d Cir.1983) (despite evidence that employer's "handling of [plaintiff] was perhaps not a model of good employee relations," plaintiff failed to establish illegal discrimination); *Murphy v. American Home Products,* 58 N.Y.2d 293, 461 N.Y. S.2d 232, 448 N.E.2d 86 (1983) (employer has no duty of good faith dealing with at will employees in New York State absent statutory mandate). Thus, to the extent that Gerstein's decision to fire plaintiff was in fact influenced by this general personality conflict, and by Gerstein's own overbearing and volatile character, it is not legally vulnerable.

■ Furthermore, while acknowleging that there was some sexual element in Gerstein's hostility to plaintiff that may have heightened his annoyance with her on the day she was fired, the court believes that even without this extra emotional coloring, Gerstein's reaction to such a defiant employee would have been no different. In addition, it was Gaylon Morris, of whom plaintiff makes no allegation of sexual harassment, and not Gerstein, who made the final decision to terminate plaintiff. Thus, the court finds that whatever sexual tension there may have been between plaintiff and George Gerstein, it was not a "but

for" or a substantial cause of plaintiff's dismissal. Plaintiff's behavior during the February 2 incident, in combination with her declining work record, were sufficient in and of themselves to have caused defendants to terminate her. *See Neville v. Taft Broadcasting Co.*, 42 Fair Empl.Prac. Cas. (BNA) 1314 (W.D.N.Y.1987) [Available on WESTLAW, DCT database], *Freedman v. American Standard, Inc.*, 41 Fair Empl. Prac.Cas. (BNA) 471, 476 (D.N.J.1986) [Available on WESTLAW, DCT database]; *Ramsey v. Olin Corp.*, 39 Fair Empl.Prac. Cas. (BNA) 959, 963 (S.D.N.Y.1984) (despite showing of sexual advances, failure to establish legally sufficient causal relation between such conduct and adverse employment decision justified by other legitimate factors warrants dismissal of Title VII claims). Accordingly, because plaintiff has failed to satisfy her ultimate burden of proving that defendants' proffered reasons for her termination were pretextual and that illegal motivations were deciding factors in her termination, plaintiff's claim under Title VII must fail.

Though the court has found in favor of defendants in this action, this should in no way be construed as a stamp of approval on the conduct that gave rise to this lawsuit. The circumstances of plaintiff's firing, particularly, do not offer a desirable model for employment or any other kind of relations. In addition, the court wishes to emphasize that here, as in all Title VII cases, the outcome must be restricted to the particular facts of this controversy. The complex determinations of causation, credibility and motivation necessarily made by any court in deciding one individual's Title VII lawsuit, cannot be transferred wholesale to other employment litigations, no matter how similar to the present one they might appear on their faces.

*Conclusion*

Plaintiff has failed to prove, by a fair preponderance of the credible evidence, that she was discriminated against on the basis of sex either through her subjection to a hostile sexual work environment that was injurious in and of itself, or by defendants' reliance on impermissible sexual factors in their decision to terminate her employment. Accordingly, this case is dismissed.

Defendants' motion for Rule 11 sanctions, and for attorneys fees as prevailing parties under Title VII, is denied. Plaintiff's case was a difficult one both factually and legally and in no way warrants the imposition of Rule 11 sanctions. Defendants' request for attorneys fees is denied in the discretion of the court. *See* 42 U.S.C. § 2000e–5(k).

■ Furthermore, in the court's discretion, costs shall not be awarded in this action in view of the plainly nonfrivolous nature of this lawsuit, the important public interest served by the pursuit of colorable Title VII claims, and in consideration of the vast economic disparity between plaintiff, whose annual income is approximately $15,000, and defendants. *See generally Freedman v. American Standard Inc.*, 41 Fair Empl.Prac.Cas. (BNA) 471, 476 (D.N.J. 1986) [Available on WESTLAW, DCT database]; *Evans v. American Import Merchants*, 82 F.R.D. 710 (S.D.N.Y.1979); *Dual v. Cleland*, 79 F.R.D. 696 (D.D.C. 1978); *Suffolk County v. Secretary of Interior*, 76 F.R.D. 469 (E.D.N.Y.1977); *Maldonado v. Parasole*, 66 F.R.D. 388 (E.D.N.Y.1975).