OPINION OF THE COURT
Andrew V. Siracuse, J.
On December 14, 1992, Kathy Ormsby, a bus driver for the *23 Churchville-Chili Central School District, complained to District authorities that she had been sexually harassed by another bus driver, David Becker. Assistant Superintendent Richard Castaldo investigated the complaint. Ormsby told Castaldo that on Valentine’s Day that year Becker had sent her a valentine. She had told him to give it to his wife, Donna; Becker replied that he had been up to 2:00 a.m. deciding what to write but that she should not think he was romantically inclined towards her.
For the remainder of the 1991-1992 school year Becker was very attentive. He stopped at Ormsby’s bus every morning, brought her cookies and candy, and tried to foster a friendship between Ormsby and his wife. He tried to organize a surprise birthday party with the other drivers, which Ormsby frustrated. When she was thinking of leaving the District he told her that he would not want to work there without her to talk to. He followed her around at the bus drivers’ picnic.
Near the end of the school year Ormsby hired Becker to build her a bookshelf. She paid him and enclosed a letter with the check, stating, in part: “I thought about our conversation. No more Bus talks or candy etc. Simple Hi is enough. I know how Donna feels. I’ve been in her shoes. * * * I feel bad about her feelings. But I completely understand. I don’t like to hurt anyone’s feelings. Its not worth it. So our friendship is less. Because its what I want. Thanks for the bookshelf. I wrote this because you’re very stubborn man. You don’t listen well. Take care David. See you Sept.” Becker replied, according to Ormsby, with a letter saying he was upset and felt bad.
In October 1992, Becker instigated a bet over a football game and paid the proposed forfeit, a plate of brownies, when his team lost. Ormsby got angry at him; she had wanted no part of the wager. Becker made her a scrapbook and took pictures of her and her bus, allegedly over her protest. He interrupted a conversation she had with another driver and played minor pranks on her until she asked him to stop.
Becker denied certain of these accounts. Castaldo, after speaking with both parties and interviewing other drivers, decided that Becker had sexually harassed Ormsby. In his report he stated:
“[Becker] refused to back off, and he did not heed the signals KO was giving him. It is my contention that his apparent regard for her was more than casual but not necessarily a conscious romantic infatuation. It is hard for me to *24 determine if he realized that his continual attention toward her was often considered by her as harassment and that for the most part she did not welcome his attention.
"KO admittedly owns part of the problem. She let this ‘friendship’ go too far by not stopping it soon enough. I do believe from her own testimony and from those I interviewed that she is very timid and generally has a tough time asserting herself.
"It appears to me that a strange friendship developed between KO and DB and that she reached a point in this relationship where she wanted it to change and she did not make it clear to DB. It is also apparent to me that DB did not reach the same conclusion and persisted on it’s [sic] continuance.
"In conclusion, I do find DB guilty of sexual harassment because he was responsible for creating a hostile work environment for KO.”
The report recommended that Becker be reprimanded and that any similar future incident would be grounds for immediate firing.
On January 4, 1993, the District Superintendent approved Castaldo’s report. Castaldo spoke with Becker the next day and told him he had been found guilty of sexual harassment.[1] He then placed a letter of reprimand in the file, which warned that "[i]n the future, should you engage in similar actions or in any other action that we believe is conduct unbecoming of an employee, I will recommend that your employment be immediately terminated.” Becker’s attorney wrote to the Superintendent within two weeks, stating his factual case denying that Becker had anything other than a friendly interest in Ormsby, conveying Becker’s willingness to stay away from her, and insisting that he had done nothing that could be construed objectively as sexual harassment. A letter from the Superintendent dated February 4, 1993, replied that "Although I do not agree with your conclusions, I have instructed Mr. Castaldo to file your comments with the report.”
Becker then brought this CPLR article 78 proceeding to reverse the findings, purge his record of the reprimand, and for costs.[2]
*25 Before this court turns to the merits of the case, a further procedural point must be noted. Questions of substantial evidence must be referred to the Appellate Division in article 78 cases (CPLR 7804 [g]). For that reason, this court will consider only the legal sufficiency of the conduct alleged — that is, whether or not the conduct claimed by Ormsby is sexual harassment as a matter of law. It cannot offer any opinion as to the nature of the evidence supporting the District’s determination, and nothing in what follows should be taken to suggest an evidentiary determination on the court’s part.
Initially, it should be stated that the absence of a District policy on sexual harassment does not bar discipline for harassment. The District, like other employers, would be liable under Federal and State law for failing to stop work place harassment, regardless of its written or de facto policies, and it would certainly be justified in investigating complaints and disciplining violators in the absence of these.
There are two forms of sexual harassment: quid pro quo harassment and hostile environment harassment. The first has no bearing on the present case, as Becker, a fellow employee, was in no position to affect Ormsby’s employment. The report cites Becker instead for creating a hostile work environment.
Whether a hostile work environment exists must be decided on the totality of circumstances (Kotcher v Rosa & Sullivan Appliance Ctr., 957 F2d 59, 63 [2d Cir 1992]), but there are several elements that must be proved: that the employee belongs to a protected group and was subjected to unwelcome sexual harassment based on sex that affected a term, condition or privilege of employment (Henson v City of Dundee, 682 F2d 897 [11th Cir 1982]). The conduct need not be sexual in nature or tone; hostility and intimidation based on sex is also harassment (Andrews v City of Philadelphia, 895 F2d 1469, 1485 [3d Cir 1990]). However, it must be based on the employee’s sex and be sufficiently severe and pervasive as to create a " 'poisoned’ atmosphere”, in which the complainant "must run 'a gauntlet of sexual abuse’ ” in order to do her job (Christoforou v Ryder Truck Rental, 668 F Supp 294, 301 [SD NY 1987]).
The standard is essentially an objective one; actionable conduct is such that "would have interfered with a reasonable person’s work performance and would have seriously affected a reasonable person’s emotional well-being. Further, plaintiff *26 must show that she was actually offended by the conduct, and suffered some injury from it” (Koster v Chase Manhattan Bank, 687 F Supp 848, 862 [SD NY 1988]). It is doubtful that mere social advances can perhaps constitute sexual harassment (see, e.g., Robinson v Thornburgh, 1990 US D LEXIS 18133, 54 Fair Empl Prac Cas [BNA] 324 [D DC 1990] [two coworkers seeking to date plaintiff]; Christoforou v Ryder Truck Rental, 668 F Supp 294, 299, supra [supervisor sitting on desk and trying to engage plaintiff in conversation]). An example in the EEOC Guidelines on sexual harassment supports this view: "Charging Party alleges that her co-worker made repeated unwelcome sexual advances toward her. An investigation discloses that the alleged 'advances’ consisted of invitations to join a group of employees who regularly socialized at dinner after work. The co-worker’s invitations, viewed in that context and from the perspective of a reasonable person, would not have created a hostile environment and therefore did not constitute sexual harassment” (EEOC Policy Guidance, Mar. 19, 1990, reproduced in Lindenbaum & Kadue, Sexual Harassment in Employment Law, at 669).
In light of these standards this court must grant the petition. The charges, even if all true, show no hint of sexual harassment. It is unclear, in fact, to what extent Ormsby informed Becker that his attentions were unwelcome, although he does appear from the record to be persistent to the point of being obtuse. Nonetheless, it is clear that he stopped playing minor pranks when she asked him not to, and even Castaldo stated that Becker may not have understood that Ormsby wanted less attention from him. It is surely inappropriate to discipline an employee for unwelcome advances if it is uncertain that he was told they were unwelcome.
Moreover, not all unwelcome attention is unwelcome sexual harassment, and the nature of Becker’s acts was neither sexual nor gender-based. He seemed to have no conscious sexual or emotional goal in mind, merely trying almost obsessively to woo Ormsby as a friend. (It would otherwise be hard to account for the charge that he tried to get Ormsby to befriend his wife.)[3] Becker’s conduct would not have been appreciably different had he tried to befriend a male coworker. They show a persistent interest in Ormsby, admit *27 tedly, but in a way so devoid of sexual content as to appear almost childlike.
From an objective point of view Becker might be found to be annoying or insensitive, but there is nothing in his acts that suggest sexual harassment. Nor is there anything that could reasonably be held to have poisoned the work atmosphere. No reasonable person, male or female, would have found his attentions so oppressive as to interfere with work or emotional well-being.
Castaldo’s report suggests as much, noting Ormsby’s reluctance to speak to Becker as accounting for a share of the problem. (The statements from other bus drivers were all but unanimous in agreeing.) In the end, he seems to have relied on Ormsby’s subjective experience.
As the cases and the EEOC Guidelines show, this is the wrong standard. It is the objective propriety of Becker’s conduct, not Ormsby’s reaction, that must be judged. Becker, like any other employee, is called upon to refrain from creating or contributing to a sexually threatening work place. That his innocent — even naive — attentions may have seemed like harassment to Ormsby does not render him liable for discipline. This is not to say that Becker should have persisted in seeking out Ormsby, or that the District might not be within its rights in advising him to refrain. The court rules only that his actions, as a matter of law, cannot constitute sexual harassment, and that the District’s actions in disciplining him for sexual harassment were thus arbitrary and capricious.
The petition is granted, with costs and disbursements. The District is to remove the letter from David Becker’s file and the alleged conduct may not be the basis for any future discipline.

. Citations relevant to the procedural issues edited from the decision have been omitted.

. A discussion of several procedural issues has been edited from the decision at this point.

. If Becker were trying to establish a sexual menage with his wife and Ormsby the attempt might constitute harassment, but the suggestion is so inconsistent with the record that to state it shows its absurdity.