**Pasquale PETRAMALE, Plaintiff,**

v.

**LOCAL NO. 17 OF LABORERS' INTERNATIONAL UNION OF NORTH AMERICA; Laborers' International Union of North America; Anthony Galietta, individually and as President, and Lawrence T. Diorio, individually and as Secretary-Treasurer of Local No. 17; and Lorenzo Diorio, Defendants.**

No. 81 Civ. 4817 (IBC).

United States District Court,
S.D. New York.

Oct. 1, 1987.

Hall & Sloan, New York City, for plaintiff; Burton H. Hall, of counsel.

Rider, Weiner, Lewis & Melchiori, P.C., Newburgh, N.Y., for defendants; Alan R. Lewis, of counsel.

## OPINION

IRVING BEN COOPER, District Judge.

Defendants move for judgment *non obstante veredicto* ("JNOV" or "judgment n.o.v.") pursuant to Fed.R.Civ.P. 50(b), or in the alternative, for a new trial pursuant to Fed.R.Civ.P. 59(a). Plaintiff opposes the motion.

In order to clarify the basis of this motion, it is necessary to reiterate the facts of the underlying action which, as to the liability issue, were found by our Circuit Court.

736 F.2d 13 (2d Cir.1984), *cert. denied,* 469 U.S. 1087, 105 S.Ct. 593, 83 L.Ed.2d 702 (1984).

Plaintiff has been a member of defendant Local No. 17 ("Local 17" or "the Local") of former defendant Laborers International Union of North America ("LIUNA" or "the International") for more than thirty years. At times relevant to this litigation, Local 17's president was defendant Anthony Galietta; its business manager was defendant Lorenzo Diorio; and its Secretary-Treasurer was defendant Lawrence Diorio.

At the regular meeting of the Local held on August 29, 1980, one of the union members, Anthony DuBaldi, became involved in a scuffle; plaintiff came to his aid. Plaintiff was confronted by other members; an altercation resulted and the police were called. After order was restored, Petramale stood up and spoke without recognition by the chair. According to the minutes of the meeting:

> Br. Pat Petramale stated from the back of the meeting Hall that all three of you are crooks, Referring to the three Delegates on the rostrum. All the fucking Officers are crooks. The whole fucking Union and International is crooked, and Br. Reed and Br. Curry Naming the Election Committee are fucking liars. Fuck you all, you laborers deserve these people. I'm getting out of this fucking Union. They took all your money.

Following his remarks, Petramale exited from the meeting. At trial, he admitted that his words were critical of union officials, but he denied use of any expletives.

Two days later, a story about the meeting was reported in the local newspaper. The article stated, *inter alia:*

> A rift within the local has been widening since the June 20 election. Elections Committee member Pasquale "Pat" Petramale of Kingston, called this election "corrupt and fixed" while he spoke on the floor of the meeting Friday night....

> Petramale, a former supporter of Diorio who testified against him during the election dispute, claimed the outbreak of

violence was "set up" by the union leadership.

He charged he was laid off from his job as flagman on the Route 9W arterial project at Kingston earlier Friday because of his opposition to Diorio. Petramale said he has been a union member for more than 30 years.

On September 3, intra-union disciplinary charges were filed against plaintiff which read:

This is to inform you that Brother Lorenzo Diorio, ... Brother Anthony Galietta, ... Brother Lawrence Diorio, ... all members in good standing in Local No. 17 are preferring charges against Brother Patsy Petramale ... for actions and violations against the officers of the local union and the international union under "Obligations of Members," Section 3 Page 8 of the Uniform Local Union Constitution [the International Constitution, applicable to all Locals].

The specific instances I am referring to are on August 29, 1980 at the Regular Monthly Membership Meeting Brother Petramale violated Section 3 under Art. III:

(f) by conducting himself in such a manner as to interfere with the proper and orderly conduct of the business of the local union by using vulgar and profane language and slanderous statements and accusations against the officers of the local union and the international union.

(g) by willfully slandering the officers of the local union and the international union by circulating false reports and gross misrepresentations about their honesty at the regular membership meeting.

Brother Petramale slandered the officers in the Middletown Record August 31, 1980 by stating that the election was corrupt and fixed and also when he claimed that the outbreak of violence was set up by the union leadership.

The charges directly reflected the language of Article III, section 3 of the Uniform Local Union Constitution ("ULUC"). The relevant sections of the ULUC read:

(f) To refrain from attending a meeting or function under the influence of liquor or conducting himself in such a manner as to interfere with the proper and orderly conduct of ... business ...: at no time use vulgar or profane language nor make any slanderous statements or accusations toward any member or officer of the Local Union ...

(g) To refrain from willfully slandering the International Union ... or Local Union or any officer or member thereof ... and from circulating false reports or gross misrepresentations about the honesty of officers or members ...[1]

A hearing was held by the Trial Board of Local 17 at which the minutes and newspaper article were the sole evidence. The Board found Petramale "guilty of all charges," fined him $1,500.00 and suspended him from attendance at union meetings for a period of ten years—discipline which was subsequently approved by the membership of the Local. An appeal to LIUNA was then made by plaintiff.

The Hearing Panel of LIUNA modified the conclusions of the Trial Board by finding that Petramale's conduct at the August 29 meeting violated Article III, sections 3(f) and (g), rescinding the fine and reducing the suspension to two years. On December 3, 1981, the suspension was reduced to meetings already passed. Plaintiff was never ousted from membership in the union.

Plaintiff instituted this action claiming that the discipline and union constitutional provisions on which it was based violated his statutory rights of free speech as provided in section 101 of the Labor Management Reporting and Disclosure Act ("LMRDA").

A jury verdict in favor of defendants and against plaintiff was rendered. On appeal, the Second Circuit Court of Appeals found

---

**1.** In September 1981, LIUNA amended its constitution to delete the references in subsections (f) and (g) to slanderous statements.

that plaintiff's claims for declaratory and injunctive relief pursuant to subsections (f) and (g) of Article III section 3 of the ULUC were moot since the relevant portions of those subsections had been deleted by LIUNA. The Circuit stated that plaintiff's claims for injunctive relief against the discipline imposed by the Local are viable and ordered us to enter an appropriate order to that effect. Finally, the Circuit held that when discipline is imposed on a number of grounds, one of which involves protected speech, the discipline is unlawful. The Court reversed and ordered that plaintiff's claims for damages and fees had to be adjudicated on remand. 736 F.2d at 18.

On November 13, 1985 we entered an order directing the entry of judgment in favor of plaintiff on the issue of liability. By opinion dated January 6, 1986 we held the following: (1) LIUNA's motion for partial summary judgment was granted; finding that LIUNA merely exercised its appellate capacity and did so in good faith, we held that it could not be liable for monetary damages though it could be liable for declaratory and injunctive relief; (2) LIUNA's motion for leave to amend its answer was denied; (3) LIUNA's motion that it be represented by Theodore T. Green, Esq., was granted; (4) Plaintiff's motion for leave to amend the complaint was denied; and (5) LIUNA's motion for partial summary judgment on the attorney's fees issue was held in abeyance pending the outcome of the trial on damages.

By memorandum dated February 25, 1986, we denied plaintiff's motion for leave to file an interlocutory appeal on our order granting LIUNA's motion for partial summary judgment.

By memorandum dated April 18, 1986, we held, *inter alia,* that LIUNA had until May 2, 1986 to enter into a stipulation that it be permanently enjoined from effectuating the disciplinary punishment imposed upon plaintiff and from otherwise interfering with plaintiff's right to attend and participate in meetings of the Local 17 membership, to correct its records to reflect that the discipline imposed on plaintiff is "null and void and not in effect," and to so notify all members of the Local; if LIUNA did not enter into these stipulations, corrections and notifications, we ordered that it would have to be present at trial.

By order signed May 8, 1986, LIUNA stipulated to the permanent injunction; furthermore, notice was sent to us that LIUNA had in fact entered into the corrections and notifications we ordered. Consequently, LIUNA was not present at the trial on damages.

On June 2–6, 1986, a trial was held against Local 17 on the issue of damages. The jury rendered a verdict in favor of plaintiff and against defendants in the sum of $200,000.00 in compensatory damages and $50,000.00 in punitive damages. The jury also awarded plaintiff $5,000.00 from each individual defendant as punitive damages. Defendants now move for judgment n.o.v. pursuant to Fed.R.Civ.P. 50(b) and in the alternative, for a new trial in accordance with Fed.R.Civ.P. 59(a).

## THE LAW

It is well-settled that in determining a motion for judgment n.o.v. the court is bound to view the totality of the evidence in the light most favorable to the prevailing party, giving that party the benefit of all inferences supported by the proof. As Judge Weinfeld stated in *Brink's Inc. v. City of New York,* 546 F.Supp. 403 (S.D.N.Y.1982), *aff'd,* 717 F.2d 700 (2d Cir.1983):

> A trial court may correct a jury's decision only if after so viewing the evidence it is convinced that (1) there is a complete absence of probative evidence to support the verdict in favor of the prevailing party, or (2) that the evidence is so strong and overwhelmingly in favor of the nonprevailing party that reasonable and fair-minded persons in the exercise of impartial judgment could not render a verdict against it.

*Id.* at 406–07. We shall examine each part of the two-part test set forth by Judge Weinfeld in determining the appropriateness of granting judgment n.o.v. herein.

In accordance with the first part of the test, judgment n.o.v. is proper when there

is a complete lack of probative evidence in support of the verdict.

■ Following a long line of cases in the Ninth Circuit, our Circuit Court of Appeals recently found that claims of emotional distress arising under the LMRDA must be supported by a physical manifestation of injury in order to safeguard against excessive and speculative damages awards suffered by unions. *See Rodonich v. House Wreckers Union Local 95 of Laborers' International Union*, 817 F.2d 967, 977 (2d Cir.1987) (citing *Bloom v. International Brotherhood of Teamsters*, 752 F.2d 1312, 1315 (9th Cir.1984); *Bise v. International Brotherhood of Electrical Workers*, 618 F.2d 1299, 1305 (9th Cir.1979), *cert. denied*, 449 U.S. 904, 101 S.Ct. 279, 66 L.Ed.2d 136 (1980); *International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers v. Rafferty*, 348 F.2d 307, 315 (9th Cir.1965)). *See Higgins v. Harden*, 644 F.2d 1348, 1353 (9th Cir. 1981). In *Bise, supra*, the jury found that in addition to the emotional distress experienced by the plaintiff union members, the members also suffered from lost sleep, headaches, heart palpitations, and numbness in the feet and hands—enough actual injury to prevent the granting of judgment n.o.v.

In the instant case, the proof was devoid of any indication of actual injury. Plaintiff's son Joseph Petramale testified that after the occurrence of the incident with the union his father was "very moody, nervous, argued about a lot of things ..." (Tr. at 159).[2] His other son, Steven Petramale, testified that subsequent to the incident with the union, there was "a lot more arguing and a lot more hatred in the arguing ... My father was very on edge and disturbed over the problems he was having." (Tr. at 191–92) Plaintiff himself testified that the incident with the union affected him in that he became nervous and that he cannot sleep. (Tr. at 257) He did not state when his sleeping problem began or describe its extent. During cross-exmi-

nation, he admitted that he never sought medical treatment as a result of his claimed damages. (Tr. at 260)

■ In light of the complete lack of evidence presented at trial as to any actual injury suffered by plaintiff, we do not hesitate to conclude that plaintiff has failed to meet his burden of proving he sustained recoverable damages for emotional distress. *See Trainer v. Philadelphia National Bank*, 541 F.Supp. 195 (E.D.Pa. 1982), *aff'd*, 707 F.2d 1395 (3d Cir.1983) (JNOV proper when plaintiff has failed to meet his burden of proof). Consequently, we are compelled to grant the motion by defendant for judgment n.o.v. pursuant to Fed.R.Civ.P. 50(b).

■ In *Rodonich, supra*, at 977, the Second Circuit, in finding that claims of emotional distress must be supported by a physical manifestation of injury, directly implied that this rule is equally applicable to claims for injury to reputation. Accordingly, the claim of plaintiff herein for damages due to injury to reputation is also dismissed on the ground that he failed to present any proof of a physical manifestation of injury.

■ Furthermore, we are not at all convinced that plaintiff has met his requisite burden of proving that the injuries he sustained were caused by the disciplinary action imposed by the union and the individual defendants. It is beyond cavil that in actions under the LMRDA, a plaintiff is required to prove that the injury he or she sustained was causally connected to the wrongdoing by the defendant. *See Rosario v. Amalgamated Ladies' Garment Cutters' Union*, 605 F.2d 1228, 1245 (2d Cir. 1979), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980). The proof of any such causal connection in the instant case is hardly sketchy, at best.

Joseph Petramale testified that before the incident with the union occurred, plaintiff and his wife, Joseph's parents, got along well. After the incident, they argued

---

**2.** Throughout this opinion, the letters "Tr." followed by a number in parentheses indicate a particular page number in the trial transcript.

frequently and ultimately separated. (Tr. at 160) When asked what caused the separation, Joseph said, "The union, the trouble he had with the union ... all the aggravation he had with them and my mother didn't like ... the way he was acting, because he would always come home and argue and they didn't have too many pleasant words to say." (*Id.*) Joseph Petramale said his mother told plaintiff before they separated to "go out and get another job or get out of the house"; that she did not want to hear him talk about the union anymore. (Tr. at 160–61) When asked whether Joseph observed these statements as leading to his parents' split, Joseph responded, "Yes, I'd say so." (Tr. at 161)

We point out that Joseph Petramale never specifically testified that it was the wrongful conduct imposed by the union that caused the problems suffered by plaintiff. Rather, he stated that the cause was the "trouble" or "aggravation" plaintiff had with "the union." Which particular trouble was never spelled out. Indeed, there was reference to arguments about bills not being paid—perhaps as much, if not more, of the reason for the couple's separation.

The testimony by plaintiff's other son, Steven Petramale, was no more helpful to plaintiff's case. He testified that the union was worrying his father; "I guess he was having a lot of problems ... I don't know the union or nothing like that myself to be detailed ... [but] I thought—it definitely broke them up, without a doubt." (Tr. at 193) In short, Steven, who admitted he did not really know what was going on between his father and the union, testified that his father's problems with the union were the cause of plaintiff's disturbance and marital separation. There was no testimony suggesting that it was the wrongful discipline imposed by the union that caused the emotional distress.

Plaintiff testified that "the union, the local" caused the separation between he and his wife (Tr. 254); that they quarreled about the "union and everything else." (Tr. 253); There was no direct reference to

the discipline imposed by the union as being the cause of plaintiff's suffering.

In sum, we are hard pressed to find any support in the trial record that there was a causal connection between the discipline imposed by the union and the emotional distress allegedly sustained by plaintiff. *See Brinks, Inc., supra,* at 406–07; *Trainer, supra.*

■ The second part of the test set forth by Judge Weinfeld in determining the appropriateness of granting judgment n.o.v. requires the Court to consider whether "the evidence is so strong and overwhelmingly in favor of the nonprevailing party that reasonable and fair-minded persons in the exercise of impartial judgment could not render a verdict against it." *Brink's Inc., supra,* at 407. In examining this test, the Fifth Circuit Court of Appeals acknowledged that the measurement of what is "substantial evidence" sufficient to create a jury question leads a court into "murky waters." *Ralston Purina Co. v. Hobson,* 554 F.2d 725, 727 (5th Cir.1977). Certainly, it is clear that the inclusion in the record of a scintilla of evidence in support of the verdict of the jury does not preclude a granting of the motion. *See Liberty Leather Corp. v. Callum,* 653 F.2d 694, 697 (1st Cir.1981); *Murphy v. Owens-Corning Fiberglas Corp.,* 447 F.Supp. 557, 560 (D.Kan.1977). The question is whether there is "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Ralston Purina, supra,* at 727 (quoting *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (*en banc*)). In the *Ralston Purina* case, the Fifth Circuit concluded that self-interested testimony, unsupported by other evidence, will not support a jury verdict.

The sole proof in support of the jury verdict herein is, like in *Ralston Purina, supra,* self-interested testimony. The statements by plaintiff as to the cause of his emotional distress and marital problems are clearly made in his self-interest. Likewise as to the statements made by his son, Joseph Petramale, who carried a "beef"

against the union which, he testified, hardly called him to perform jobs during the past few years. (Tr. 164) Plaintiff's other son, Steven, testified that the union caused plaintiff's emotional problems, but Steven admitted that he was not familiar with the union or the problems his father was having with them. (Tr. at 193) In short, the only evidence in support of plaintiff's argument that the union caused his emotional difficulties was self-interested testimony.

In contrast, union member John DePasquale testified that the reason members did not like plaintiff after the incident occurred was that at meetings plaintiff "would disturb, disrupt the meeting, would holler at a meeting, sometimes curse." When asked what his personal relationship with plaintiff was at the time of trial, Mr. DePasquale responded, "I think he's a friend of mine." (Tr. at 320)

Simply put, based on the totality of the record, we find that plaintiff has failed to present evidence of such quality and weight that reasonable people would not reach a different conclusion. *See Ralston Purina, supra,* at 727. For this reason as well as those elaborated upon hereinabove, we are compelled to grant judgment n.o.v. pursuant to Fed.R.Civ.P. 50(b). Since defendants' motion for JNOV is granted, we do not at this time make a ruling on their alternative request for a new trial pursuant to Fed.R.Civ.P. 50(c).

## PUNITIVE DAMAGES

■ In cases arising under the LMRDA, punitive damages may be awarded when the union or its officials have acted with malicious intent or reckless and wanton indifference to the rights of the plaintiff. *See International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 59, 99 S.Ct. 2121, 2131, 60 L.Ed.2d 698 (1979) (Blackmun, J., concurring in result); *Thyssen, Inc. v. S.S. Fortune Star,* 777 F.2d 57, 67 (2d Cir.1985); *Martin v. Citibank, N.A.,* 762 F.2d 212, 221 (2d Cir.1985); *Quinn v. DiGiulian,* 739 F.2d 637, 651 (D.C.Cir. 1984); *Morrissey v. National Maritime Union,* 544 F.2d 19, 25 (2d Cir.1976). Upon a review of the totality of the evidence, we

find that plaintiff failed to meet his burden of proving that the defendants herein so acted.

In his "Memorandum in Opposition to Defendants' Motion for Judgment N.O.V." plaintiff cites six examples which he claims point to defendants' malicious intent and reckless or wanton indifference to plaintiff's rights. They include: (1) the fact that the charges against plaintiff included not only what he allegedly said at the August 29, 1980 union meeting, but also what was reported in the local newspaper—a story told to the press by plaintiff; (2) the size of the penalty imposed by the Local on plaintiff, *i.e.,* $1,500 plus suspension from meetings for ten years; (3) a letter written by defendant Lawrence Diorio to the International while plaintiff's appeal was pending offering as reasons why plaintiff's appeal should be rejected the fact that plaintiff had made it appear that the officers of the Local were being neglectful of their duties, and had filed unfair labor practice charges with the National Labor Relations Board (Tr. at 109–113; Ex. 26); (4) After the International had modified the discipline against plaintiff, the three individual defendants brought new disciplinary charges against plaintiff based upon what had appeared in the newspapers, though they did not proceed with the charges (Tr. at 399–400; Ex. 33); (5) In another letter to the International during plaintiff's appeal, Lawrence Diorio told the union that the real reason for plaintiff's discipline was that he had interfered with the sergeant at arms at the August 29, 1980 meeting and had brought improper persons to the Local—allegations that were unrelated to the charges; and (6) At the convention of the International in September 1981, the provisions of LIUNA's Constitution under which plaintiff had been disciplined were deleted; although defendant Lawrence Diorio knew of this and that plaintiff's suspension from meetings was therefore unlawful, he made it seem as if the decision to terminate plaintiff's suspension was due to the good will of he and the Local (Ex. 39).

■ Having listened to the testimony and observed the demeanor of the parties

on two occasions, we are made well aware of the intense angry feelings between them. In our opinion, the six examples cited by plaintiff amount to just that—illustrations of angry feelings. They do not, however, demonstrate malicious intent or reckless or wanton indifference to plaintiff's rights. Indeed, the record contains instances of good will by defendants toward plaintiff. For example: (1) The discipline that was imposed was ordered by the Local Trial Board, not by any of the individual defendants, and was subsequently approved by the entire Union membership, indicating there was no private vendetta being played out. (2) Although plaintiff's appeal to the International was untimely and not brought in accordance with the Constitution, defendants allowed him to proceed with it (Ex. 17). (3) After the International affirmed the discipline as modified, defendants requested the International to rescind the discipline altogether.

Since we find that plaintiff has failed to prove that defendants acted with malicious intent or with reckless or wanton indifference to the rights of plaintiff, and in the face of impressive evidence to the contrary, we are compelled to grant judgment n.o.v. with respect to the jury's award of punitive damages totaling $65,000.

## CONCLUSION

On the basis of the foregoing, we are constrained to, and do, grant defendants' motion for judgment n.o.v. on the claims for compensatory and for punitive damages. Plaintiff is entitled to and ordered to receive nominal damages in the sum of $1.00.

SO ORDERED.