**Posr Amojo POSR, Plaintiff,**

v.

**New York City Police Officer Kevin DO-HERTY, Shield # 4478, and New York City Police Officer Thomas Holihan, Shield # 9061, Defendants.**

**No. 87 Civ. 6575 (RWS).**

United States District Court,
S.D. New York.

Sept. 13, 1990.

James I. Meyerson, New York City, for plaintiff.

Victor A. Kovner, Corp. Counsel of the City of N.Y. (Lisa A. Miller, John P. Woods, of counsel), New York City, for defendants.

## OPINION

SWEET, District Judge.

The defendants New York City Police Officers Kevin Doherty ("Doherty") and Thomas Holihan ("Holihan") have moved in accordance with Rule 50(b), Fed.R.Civ.P., for judgment notwithstanding the verdict that was rendered by the jury in favor of the plaintiff Posr Amojo Posr ("Posr")[1] in this action on December 21, 1989. For the reasons set forth below, the motion is granted in part and denied in part.

### Prior Proceedings

This action was commenced on September 11, 1987 by the filing of a complaint alleging violations of 42 U.S.C. §§ 1981 and 1983 and pendent state claims of assault, false arrest and imprisonment, intentional infliction of mental distress and malicious prosecution, arising out of an incident which took place on February 14, 1987. Various pretrial motions were made and decided. Thereafter on December 12, 1989 the trial was commenced, terminating on December 21 in a jury verdict in favor of Posr against Doherty, awarding compensatory damages of $5,000 and punitive damages of $10,000 for excessive force; and as against Holihan compensatory damages of $10,000 and punitive damages of $10,000 for false arrest in violation of 42 U.S.C. § 1983 and damages for excessive force in the same amount and classification as against Doherty, namely, $5,000 compensatory and $10,000 punitive.

This motion on the part of the defendants was argued and finally submitted on May 4, 1990.

### The Facts

The testimony during the five days of trial and the post trial submission establish certain of the facts without dispute. Posr was a participant in a demonstration that started on February 14, 1987 on the west side of Manhattan, crossed town on 42nd Street to Second Avenue and then was to go north to 49th Street where speeches were to be made and Posr was to perform. The march intended to focus interest and support with respect to the homeless as was stated by the chant which accompanied the march, "Homeless, not helpless." The demonstration and the march had obtained the necessary permits which set forth the proposed route and conduct.

At Grand Central the march diverted into Grand Central Station, contrary to the permit and to the surprise of the police officers who were escorting the march. The paraphernalia of the demonstration included a long banner which was held so that its message could be read by those observing the march. When the march approached Second Avenue, those holding the banner deemed it necessary to reverse ends so that the message could be seen to advantage. There was a line of police officers at Second Avenue arrayed to prevent the march from going down 42nd Street and to turn it up Second Avenue. Posr was among the marchers. At the corner an altercation ensued, Posr was restrained by police officers, broke away briefly and was again restrained, arrested and taken to the 17th Precinct where he was charged with resisting arrest, disorderly conduct and assault. He was detained for forty-five hours before receiving bail. The charges against Posr were dismissed in August 1987. Certain portions of the activities of the march were videotaped, some photographs were taken, and eleven eye witnesses including the parties testified.

---

1. At the time of the initiation of this action Posr was known as Charles Johnson, the name by which he was identified in all the testimony and documents prior to trial. Posr then changed his name, presumably as a result of the events which gave rise to this action, explaining that Posr was an acronym meaning Prisoner of Self Respect, a concept which he wished to emphasize by using the name as both his first and last name.

Necessary to the jury determinations as to liability were certain factual findings, and from those findings which underlay the answers to the Special Interrogatories posed and from the evidence, a version of the facts consistent with the answers and Posr's theory of the case can be set forth for the purposes of this motion. At the corner of Second Avenue and 42nd Street the march and the police line converged, in part at least because of the perceived need of the demonstrators to turn the banner around. A shoving match ensued as the police sought to resist any movement down 42nd street. Posr observed this confrontation and what he characterized as shoving by the police and sought to assist the demonstrators, in particular David Mendelsohn.

As Posr approached the confrontation, Holihan grabbed him, punches were thrown, Posr was struck in the solar plexus by a night stick, and Doherty joined the melee, receiving a blow on the nose from Posr, and being knocked down as a consequence. Posr broke away, was pursued and handcuffed. He was then transported to the precinct where the paper work was completed by Officer Joyce, Doherty in the meantime having gone to the hospital to receive medical assistance. Doherty, however, was listed as the arresting officer.

*Standards for Judgment n.o.v.*

Judgment n.o.v. may be entered only if the evidence, viewed in the light most favorable to the non-moving party and without considering credibility or the weight of the evidence, reasonably permits only a conclusion in favor of the moving party. *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 573 (2d Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982); *Mattivi v. South African Marine Corp. "Huguenot"*, 618 F.2d 163, 167 (2d Cir. 1980). In *Petramale v. Local 17, Laborers International Union*, 671 F.Supp. 261 (S.D.N.Y.1987), *rev'd on other grounds*, 847 F.2d 1009 (2d Cir.1988), the court stated that "[i]t is well settled that in determining a motion for judgment n.o.v. the court is bound to view the totality of the evidence in the light most favorable to the prevailing party, giving that party the benefit of all

inferences supported by the proof." *Id.* at 264. The court cited the standard in this circuit:

"A trial court may correct a jury's decision only if after so viewing the evidence it is convinced that (1) there is a complete absence of probative evidence to support the verdict in favor of the prevailing party, or (2) that the evidence is so strong and overwhelmingly in favor of the non prevailing party that reasonable and fair-minded persons in the exercise of impartial judgment could not render a verdict against it."

*Id.* (quoting *Brink's Inc. v. City of New York*, 546 F.Supp. 403 (S.D.N.Y.1982), *aff'd*, 717 F.2d 700 (2d Cir.1983)). Furthermore, the fact that some of the evidence might support the jury verdict "does not preclude a granting of the motion [for j.n.o. v.]." *Petramale*, 671 F.Supp. at 266.

*Excessive Force*

■ Although the versions of the events differed as between the parties and witnesses, it cannot be said that there was insufficient evidence to support the jury's verdict that both Doherty and Holihan used excessive force in their effort to subdue and arrest Posr.

The evidence on the excessive force issue consisted of the testimony of Posr, Doherty, Holihan, and the other witnesses, as well as still photographs and videotape taken at the scene of the confrontation. Posr testified that the physical injury that he received from this incident was that he was "struck in [his] solar plexus area twice." (Trial transcript p. 624). A witness identified Doherty as the officer who struck Posr. There was also evidence that Holihan approached Posr, shoved, grabbed and shook him. Posr could not say that it was Doherty who hit him with the only blows that landed on him. However, the videotape indicates that Doherty did have his nightstick in position to be used.

■ Where several police officers are charged with excessive force, the plaintiff must prove the involvement of each officer and the part that each particular officer played in inflicting excessive force upon

the plaintiff in order to justify the award of punitive damages against that officer. *See McFadden v. Sanchez,* 710 F.2d 907 (2d Cir.), *cert. denied,* 464 U.S. 961, 104 S.Ct. 394, 78 L.Ed.2d 337 (1983). From all the evidence the jury could infer that Doherty injured Posr by use of his nightstick, and that Holihan also injured him by shoving and grabbing at him. Whether the degree of force used was excessive or not was an issue within the appropriate province of the jury.

*Holihan Did Not Unlawfully Arrest and Detain Posr*

■ The New York Court of Appeals has defined arrest as the detaining of a person, the obtaining of the actual physical control and custody of him, and retaining it against his will and without his consent, under some real or assumed authority. *Jacques v. Sears, Roebuck & Co.,* 30 N.Y.2d 466, 473, 334 N.Y.S.2d 632, 638, 285 N.E.2d 871, 874 (1972). In making a distinction between an arrest in law and fact, the *Jacques* Court said:

"A command to stop, which is obeyed, is, of course, an arrest; but much depends on what follows, in order to constitute one entailing the responsibilities of criminal or civil false imprisonment,—as every mere command to stop may not be, nor intended to be, nor understood to be, a real 'arrest' in law or fact. Arrest includes the keeping under restraint of one so 'detained' until brought before the magistrate."

*Id.* at 473, 334 N.Y.S.2d at 638, 285 N.E.2d at 874 (quoting 1 Alexander, *The Law of Arrest* 358).

Here, Holihan did not formally arrest the plaintiff, nor did he detain him until he would be brought before the justice system. The videotape shows Holihan sitting in the police car some time before Posr was taken to the station house and the still photographs show two officers other than Doherty and Holihan handcuffing him. Holihan did not have Posr in his custody and did not bring him before the magistrate as required for false arrest. Thus whether or not Holihan had probable cause

to do so, he did not arrest Posr within the legal meaning of the term.

■ In addition, the evidence at trial did establish probable cause to arrest. "Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949) (quoting *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)) (brackets in original). The existence of probable cause is determined by analysis of the "totality of the circumstances" and is "a 'practical, non-technical conception'" based upon "'probabilities ... and the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Illinois v. Gates,* 462 U.S. 213, 231, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983) (quoting *Brinegar,* 338 U.S. at 175 & 176, 69 S.Ct. 1310 & 1311).

One of the photos (Defendant's Exhibit D–2) shows Posr striking Holihan on the left arm with his right hand. All the witnesses, including Posr, agreed that the scene took place before the events in the videotape. The photograph thus establishes that before Joyce or any other officer came into contact with Posr, Posr had knocked the arm of Holihan. Under these circumstances, Holihan had probable cause to arrest Posr for harassment or disorderly conduct.

■ Finally, the jury found that there was probable cause for Doherty to arrest Posr, but not for Holihan to do so. The objective evidence presented at trial, specifically the videotape, shows that the incident took less than twenty seconds. Posr's first contact with either of the defendant officers was with Holihan. The videotape establishes that Holihan appeared in the scuffle after the altercation began.

It is therefore inconsistent to conclude as the jury did that Doherty had probable cause some five to ten seconds into the

altercation, based upon observing a struggle, and that Holihan did not.

The verdict with respect to an unlawful arrest and detention by Holihan must therefore be set aside as without basis in the record and inconsistent with the finding with respect to Doherty.

### Punitive Damages Are Appropriate

■ While it may be difficult to assess the amount of punitive damages that are appropriate arising out of an encounter as brief as the one at issue here, nonetheless it is assumed that the jury was correctly instructed and that evidence was presented as to the nature of the conduct of the officers. Under these circumstances, it is not appropriate to set aside the jury determination as to punitive damages on the excessive force claims.

### Conclusion

The verdict against Holihan for false arrest in violation of § 1983 will be set aside for the reasons set forth. In all other respects the motion is denied. Enter judgment on notice.

It is so ordered.