944 F.2d 91
 Posr Amojo POSR, Plaintiff-Appellee, Cross-Appellant,
v.
New York City Police Officer Kevin DOHERTY, Shield # 4478,
and New York City Police Officer, Thomas Holihan,
Shield # 9061, Defendants-Appellants,
Cross-Appellees.
 Nos. 1042, 1155,
Dockets 90-7914, 90-7916.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 15, 1991.
Decided Sept. 10, 1991.
 
 James I. Myerson, New York City, for plaintiff-appellee, cross-appellant.
 Marian P. McElhinney, New York City (Victor A. Kovner, Corp. Counsel of the City of New York, Stephen J. McGrath, John P. Woods, Lisa A. Miller, of counsel), for defendants-appellants, cross-appellees.
 Before PIERCE, WINTER and WALKER, Circuit Judges.
 WALKER, Circuit Judge:
 
 
 1
 Posr Amojo Posr appeals from a judgment of the United States District Court for the Southern District of New York, (Robert J. Sweet, Judge ) following a jury trial on Posr's 42 U.S.C. § 1983 and state law tort claims arising from an altercation between him and several New York City Police officers, among them officers Kevin Doherty and Thomas Holihan, at a protest march for the homeless in New York City on February 14, 1987. At trial Posr claimed that he was unconstitutionally and unlawfully accosted, beaten, arrested, and jailed for forty hours, until he was able to post bail, on charges that were ultimately dropped.
 
 
 2
 The jury found both officers liable for using excessive force. The jury also found Doherty not liable and Holihan liable for false arrest, but the district court granted judgment n.o.v. setting aside the verdict as to Holihan. Finally, the jury found Doherty not liable for malicious prosecution.
 
 
 3
 On appeal, Posr attacks the judgment n.o.v. exonerating Holihan on the false arrest claim, and the jury verdict of no liability on the malicious prosecution claim against Doherty. He argues that the jury's verdict as to Holihan was correct both factually and legally and that the jury instructions on the malicious prosecution claim against Doherty were erroneous. Because we believe that Holihan's actions could have amounted to an arrest, but that the question of whether Holihan arrested Posr separately from Doherty was not properly presented to the jury, we reverse the judgment n.o.v. on that issue and remand the issue to be retried. We also reverse the verdict of no liability on the malicious prosecution claim and order a new trial on this issue as well.
 
 
 4
 Officers Holihan and Doherty cross-appeal from the judgments against them for excessive force. They argue that they established a qualified immunity defense, and that the excessive force verdicts were against the weight of the evidence. Because we believe that the jury could have found that the officers could not have reasonably believed that their conduct did not violate Posr's rights, we reject the officers' qualified immunity argument. We also hold that the excessive force verdicts were supported by sufficient evidence.
 
 
 5
 Affirmed in part, reversed in part, and remanded for a new trial on the false arrest claim as to Holihan, and the malicious prosecution claim.
 
 BACKGROUND
 
 6
 On February 14, 1987, Posr joined about 80 to 100 other people in a protest march in New York City organized by the Listeners Action on Homelessness and Housing. The march was to proceed from the Holland Hotel between Eighth and Ninth Avenues along 42nd Street easterly to the United Nations where a "tribunal" was to be conducted on homelessness and housing. The march went forward in an orderly fashion to Grand Central Station, passed through the terminal without incident, emerged on 42nd Street at Lexington Avenue, and continued along 42nd Street to Second Avenue, where it was turned north by the police to 47th Street, and was allowed to resume its easterly direction. At the intersection of 42nd Street and Second Avenue the events that prompted this lawsuit took place. Not surprisingly, witness accounts of what happened there vary. Since the jury found for the plaintiff on the excessive force and false arrest claims appealed from by each side, we are required to view the disputed facts relating to the incident in the light most favorable to plaintiff Posr.
 
 
 7
 Viewed in this light, the jury could reasonably have found that as the march was turned north by the police from 42nd Street onto the east sidewalk of Second Avenue, the marchers tried to reposition a large banner that had been facing south along 42nd Street so that it would face west from the east side of Second Avenue. In the process, one Mendelsohn, the banner's bearer and a witness for Posr, stepped from the curb into the street where he was pushed by Officer Holihan. Posr, near the building line on the northeast corner of 42nd Street and Second Avenue, saw the pushing and took one or more steps past Ticktin, another witness, toward Officer Holihan and Mendelsohn.
 
 
 8
 Holihan then turned toward Posr and, according to Mendelsohn, "all of a sudden ... jumped on Charles [Posr] and quickly hustled him, pushing him up against the wall and proceeded to hit him ... I'd say he was hit about--landed many, 20 times." Ticktin testified that after Posr passed her, her next memory was "a couple of them shoving him and hitting him at the same time. Sort of they were beating him and moving him northward on the street" ... "it seemed like they were immediately on him" and she remembers the plaintiff "being beaten by a couple of police officers." She testified that she was not aware of losing sight of Posr and that at no time did she see him throw a punch or hit a police officer.
 
 
 9
 Posr, who at the time of the incident was named Charles Johnson, testified that when he turned to watch the maneuvering of the banner, he saw Officer Holihan take some steps and push Mendelsohn. He then saw Holihan leave Mendelsohn, push at least one other individual and begin running directly at him after he had made a movement to get a better view. Posr moved to his right and held out his arms to protect himself. As Holihan was upon him, Holihan said "Assaulting an officer, you are dead." Holihan then slammed Posr back into the building and held him there as Posr struggled. Moments later, Officer Doherty, along with other police officers, came to Holihan's assistance. Doherty used a night stick on Posr. Posr then attempted to grab the night stick. He heard one of the officers say "I got him" and, believing the assault to be over, became still, but was then struck by a night stick twice in the solar plexus.
 
 
 10
 Posr then broke away from the officers but was apprehended after a short chase. Thereafter, Doherty formally placed Posr under arrest. A complaint, supported by Doherty's affidavit, was filed with the Criminal Court of the City of New York charging Posr with disorderly conduct, resisting arrest and assault in the third degree. Posr, unable to make bail, was detained for forty hours until a friend posted bail and he was released. No further action was taken against Posr and on August 21, 1987, all charges against him were dismissed on the motion of the District Attorney for New York County.
 
 
 11
 Posr sued officers Doherty and Holihan in the United States District Court for the Southern District of New York. His claims were grouped in three pairs, each consisting of a claim under 42 U.S.C. § 1983 and a state law tort counterpart: (1) § 1983 use of excessive force and state law assault and battery; (2) § 1983 unlawful arrest and detention and state law false arrest; and (3) § 1983 malicious prosecution and state law malicious prosecution. This pairing was appropriate since, except for § 1983's requirement that the tort be committed under color of state law, the essential elements of the two claims in each pair were substantially identical. See Raysor v. Port Authority of New York and New Jersey, 768 F.2d 34, 40 (2d Cir.1985), cert. denied, 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986). For convenience we refer to the three pairs as the excessive force claim, the false arrest claim and the malicious prosecution claim.
 
 
 12
 The jury found both defendants liable on the excessive force claim and awarded Posr $5,000 in compensatory and $10,000 in punitive damages against each defendant on those claims. It found Holihan liable for false arrest, but not Doherty, and awarded Posr $10,000 in compensatory and $10,000 in punitive damages against Holihan. Doherty, charged alone with malicious prosecution, was found not liable on that claim.
 
 
 13
 After the trial, the officers timely moved pursuant to Rule 50(b), Fed.Rules Civ.Proc., for a judgment n.o.v. dismissing all claims for which they had been found liable. The district court let the excessive force verdicts stand against both officers but set aside the false arrest verdict against Holihan. The district court also denied Posr's motion for a new trial based on a claim of error in its instructions to the jury on malicious prosecution. From these various rulings the plaintiff appeals and the defendants cross-appeal.
 
 DISCUSSION
 
 14
 At the outset, we note that the defendant officers precipitated this appeal by challenging the excessive force finding. Posr, whose counsel told us at oral argument that he would not have otherwise appealed, then appealed from the district court's post-trial dismissal of the false arrest verdict against Holihan and from the district court's jury instructions on the malicious prosecution claim. Based on an order filed November 11, 1990, pursuant to Rule 28(h), I.R.A.P., the plaintiff was redesignated as the appellant and the defendants were redesignated as the appellees.
 
 
 15
 It is worth pausing to question why the officers, having escaped from the district court with liability verdicts on only the excessive force claims--quintessential jury issues in the context of this case--chose to bring the matter to this court thereby triggering appeals by Posr. In any event, the officers' appeal is easily disposed of.
 
 A. Excessive Force
 
 16
 Officers Holihan and Doherty argue that the district court should have dismissed the excessive force claims on the ground that the officers established a defense of qualified immunity as a matter of law. While a qualified immunity defense is available to a police officer to meet a claim of excessive force, see Finnegan v. Fountain, 915 F.2d 817, 822-23 (2d Cir.1990); Calamia v. City of New York, 879 F.2d 1025, 1035-1036 (2d Cir.1989), we disagree that in this case the defendants were entitled to prevail on that defense.
 
 
 17
 A government actor is entitled to qualified immunity "insofar as [his] conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known," Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations omitted). Even where rights are clearly established, an actor will not be held liable if it was objectively reasonable for him to believe at the time of the challenged action that his actions were lawful. See Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); Warren v. Dwyer, 906 F.2d 70, 74 (2d Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990); Calamia, 879 F.2d at 1035.
 
 
 18
 The right of an individual not to be subjected to excessive force is well established and the defendants make no claim to the contrary. Rather the defendants argue that, as a matter of law, it was objectively reasonable for each of them to believe that his treatment of Posr did not violate that right. The problem with this argument is that it depends upon the officers' version of the facts--a version the jury plainly rejected. Whether the officers reasonably believed that their use of force was not excessive was properly a jury issue. By its verdict, the jury found against the defendants on this prong of the qualified immunity defense and we find no basis for disturbing this finding.
 
 
 19
 The officers also contend that the evidence at trial was insufficient to support the excessive force verdict. This argument fails for the same reason. While Holihan and Doherty testified that their actions were not excessive, plaintiff presented his own testimony as well as that of other witnesses such as Mendelsohn and Ticktin to the contrary. Quite obviously, the jury chose to credit their account over that of the officers. Moreover, videotaped and photographic evidence that was presented to the jury, some of which showed Posr at one point with his arm extended toward officer Holihan, does not, as defendants argue, compel a contrary result as a matter of law. This visual evidence, depending on when the pictures were taken in relation to what else went on, itself a jury question, was as consistent with the version the jury accepted as the one it rejected.
 
 B. False Arrest
 
 20
 Posr argues that the district court erred in setting aside the false arrest verdict against Holihan after the jury found Holihan, but not Doherty, liable. The district court based its decision on three grounds: first, that Holihan did not effect an arrest; second, that, in any event, he had probable cause to do so; and third, that the jury's verdict holding Holihan liable yet exonerating Doherty was fatally inconsistent. See Posr v. Doherty, 751 F.Supp. 1082, 1085-86 (S.D.N.Y.1990).
 
 
 21
 At the outset, we reiterate that Posr claims that he was subject both to an arrest without probable cause in contravention of § 1983 and to false arrest under New York state tort law. As noted above, we have held that, save for the requirement that the constitutional tort be under color of state law, both torts are "substantially the same." Raysor v. Port Authority of New York and New Jersey, 768 F.2d at 39.
 
 
 22
 The district court first concluded that Holihan did not effect an arrest at all because he "did not formally arrest the plaintiff, nor did he detain him until he would be brought before the justice system," citing to Jacques v. Sears, Roebuck & Co., 30 N.Y.2d 466, 334 N.Y.S.2d 632, 285 N.E.2d 871 (1972). In adopting this definition of arrest and detention for purposes of both the state law tort and the § 1983 constitutional violation, we believe the district court erred. In our view, both torts may be complete without either a formal arrest or a detention until the subject is arraigned.
 
 
 23
 There is no requirement under New York law that an arrest be in any sense formal. People v. Hicks, 68 N.Y.2d 234, 238, 508 N.Y.S.2d 163, 166, 500 N.E.2d 861, 864 (1986) ("Even without a technical formal arrest, a suspect's detention may in fact be the equivalent of an arrest, requiring probable cause"). Neither must any detention be for purposes of arraignment, People v. Chestnut, 51 N.Y.2d 14, 20, 431 N.Y.S.2d 485, 489, 409 N.E.2d 958, 962 ("when the intrusion involved is of sufficient magnitude, an 'arrest' will be said to occur whether or not the person is eventually transported to the police station and charged with a crime"), cert. denied, 449 U.S. 1018, 101 S.Ct. 582, 66 L.Ed.2d 479 (1980), nor even for a substantial period of time. Kajtazi v. Kajtazi, 488 F.Supp. 15, 18 (E.D.N.Y.1978) (intrusion may be for "any length of time").
 
 
 24
 In New York, the tort of false arrest is synonymous with that of false imprisonment. Jacques v. Sears, Roebuck & Co., 30 N.Y.2d at 473, 334 N.Y.S.2d at 638, 285 N.E.2d at 877. In Broughton v. State, 37 N.Y.2d 451, 373 N.Y.S.2d 87, 335 N.E.2d 310, cert. denied, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975), the New York Court of Appeals described the state law tort of false arrest or imprisonment as follows:
 
 
 25
 The action for false imprisonment is derived from the ancient common-law action of trespass and protects the personal interest of freedom from restraint of movement. Whenever a person unlawfully obstructs or deprives another of his freedom to choose his own location, that person will be liable for that interference (Restatement, 2d, Torts, § 35, comment h). To establish this cause of action the plaintiff must show that: (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged (Restatement, 2d, Torts, § 35; but see Prosser, Torts [4th ed.], § 11, which rejects the requirement that the plaintiff must be conscious of the confinement).
 
 
 26
 Id., 37 N.Y.2d at 456, 457, 373 N.Y.S.2d at 93, 335 N.E.2d at 316.
 
 
 27
 While it is true that the New York Court of Appeals in Jacques v. Sears, Roebuck & Co., stated that "[a]rrest includes the keeping under restraint of one so 'detained' until brought before a magistrate," 30 N.Y.2d at 473, 334 N.Y.S.2d at 638, 285 N.E.2d at 877, a phrase quoted, and evidently relied upon, by the district judge, we read that language as setting forth one of several circumstances under which there may be an arrest, but not as stating a necessary prerequisite. Earlier, the Jacques court, citing Professor Alexander's, The Law of Arrest, 1974 (Vol. 1, at p. 353), quoted approvingly the following definition of arrest that is close to that developed in federal caselaw.
 
 
 28
 An "arrest" is the detaining of a person, the obtaining of the actual physical control and custody of him and retaining it against his will and without his consent under some real or assumed authority.
 
 
 29
 Id. 30 N.Y.2d at 472, 334 N.Y.S.2d at 638, 285 N.E.2d at 877. The Jacques court stated that Professor Alexander "note[d] that the word 'arrest' is derived from the French word arreter, which means to stop, to detain, to hinder, to obstruct" and "[h]e defines 'imprisonment' as an arrest, a detention, a confinement." Id. at 472-73, 334 N.Y.S.2d 632, 285 N.E.2d 871. In Broughton, the New York Court of Appeals stressed that "the action for false imprisonment ... protects the personal interest of freedom from restraint of movement," 37 N.Y.2d at 456, 373 N.Y.S.2d at 93, 335 N.E.2d at 316, and that liability will occur "[w]henever a person unlawfully obstructs or deprives another of his freedom to choose his own location." Id. In short, we believe that the district court, in requiring that before an arrest can be actionable it must be formal and accompanied by detention until presentation to a judicial officer, took an unduly restrictive view of what constitutes an arrest under New York Law.
 
 
 30
 The district court's transposition of this incorrect notion of an arrest under New York Law into the § 1983 claim is also at odds with the constitutional definition of unlawful arrest. The Fourth Amendment, of course, does not by its terms proscribe false arrests; it proscribes "unreasonable ... seizures." An arrest, however, is a seizure, indeed it is the "quintessential 'seizure of the person.' " California v. Hodari D., --- U.S. ----, 111 S.Ct. 1547, 1549, 113 L.Ed.2d 690 (1991). The standard test for what constitutes a seizure was first articulated by Justice Stewart in United States v. Mendenhall, 446 U.S. 544, 551-57, 100 S.Ct. 1870, 1875-78, 64 L.Ed.2d 497 (1980), and adopted by the full Court in INS v. Delgado, 466 U.S. 210, 215, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984). The police can be said to have seized an individual "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave," Mendenhall, 446 U.S. at 554, 100 S.Ct. at 1877. We have held that when an officer " 'even briefly detains an individual and restrains that persons right to walk away', he has effected a seizure and the limitations of the Fourth Amendment become applicable." United States v. Moreno, 897 F.2d 26, 30 (2d Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 3250, 111 L.Ed.2d 760 (1990); (citing United States v. Sugrim, 732 F.2d 25, 28 (2d Cir.1984)).
 
 
 31
 Of course, just as not every encounter between a citizen and the police is a seizure, see Terry v. Ohio, 392 U.S. 1, 13, 88 S.Ct. 1868, 1875, 20 L.Ed.2d 889 (1968), not every seizure is an arrest. Whether an arrest supportable by probable cause occurs, as distinct from a form of Fourth Amendment intrusion supportable by less than probable cause, depends on the seizure's level of intrusiveness, and on the corresponding degree of justification required to effect each level of intrusiveness. See Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983) ("The scope of the detention must be carefully tailored to its underlying justification."); United States v. Pelusio, 725 F.2d 161, 165 (2d Cir.1983). Thus it is not enough to say a person has been arrested simply because, due to police action, he reasonably believes he is not free to leave.
 
 
 32
 Two categories of seizures of the person implicating the protection of the Fourth Amendment have emerged in the caselaw. The first, an "investigative detention" or a Terry stop, employs "the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time," and can be supported by reasonable suspicion, instead of probable cause. Florida v. Royer, 460 U.S. at 500, 103 S.Ct. at 1325; see also United States v. Seelye, 815 F.2d 48, 50 (8th Cir.1987); United States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir.1989) ("investigative detentions, involve[ ] reasonably brief encounters in which a reasonable person would have believed that he or she was not free to leave.") As the level of intrusiveness rises, however, an encounter between the police and a citizen is more properly categorized as an arrest--the second category of seizures of the person. "If the totality of circumstances indicates that an encounter has become too intrusive to be classified as an investigative detention, the encounter is a full-scale arrest, and the government must establish that the arrest is supported by probable cause." Hastamorir, 881 F.2d at 1556; see also United States v. Espinosa, 782 F.2d 888, 891 (10th Cir.1986) ("an arrest, is a seizure characterized by [a] highly intrusive or lengthy search or detention"); Seelye, 815 F.2d at 50 ("if the force used exceeds these limits, an investigatory stop is converted into an arrest.").
 
 
 33
 Of course either an arrest or a detention supportable by less than probable cause may be actionable under § 1983, provided the "seizure" in question is "unreasonable." See Brower v. County of Inyo, 489 U.S. 593, 599, 109 S.Ct. 1378, 1382-83, 103 L.Ed.2d 628 (1989). However, since Posr has alleged an unconstitutional "false arrest" instead of a mere "unreasonable seizure," we must determine whether the encounter between him and Holihan could have amounted to an arrest. There is no bright line rule differentiating an arrest from a detention supportable by less than probable cause. See Florida v. Royer, 460 U.S. at 506, 103 S.Ct. at 1329. Whether a seizure is an arrest or a merely an investigatory detention, depends on the reasonableness of the level of intrusion under the totality of the circumstances. United States v. Martinez, 808 F.2d 1050, 1053 (5th Cir.), cert. denied, 481 U.S. 1032, 107 S.Ct. 1962, 95 L.Ed.2d 533 (1987); see generally United States v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). Therefore whether an officer has exceeded the least intrusive means of dealing with a suspect and effected an arrest depends on the facts surrounding their encounter, and must be assessed in light of those facts. An arrest need not be characterized by the same level of intrusiveness in every circumstance. An arrest need not be formal; it may occur even if the formal words of arrest have not been spoken provided that the subject is restrained and his freedom of movement is restricted. See United States v. Levy, 731 F.2d 997, 1000 (2d Cir.1984) (an arrest occurred when suspect was ordered to "freeze" and was forced to stand spread-eagle against a wall); United States v. Moreno, 897 F.2d at 31 (the defendant was arrested "when [the police officer] pushed [the defendant] against the wall and told him not to move"). See generally Henry v. United States, 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959); United States ex rel. Walls v. Mancusi, 406 F.2d 505, 508-09 (2d Cir.), cert. denied, 395 U.S. 958, 89 S.Ct. 2099, 23 L.Ed.2d 745 (1969). It follows that once the intrusion of an arrest has occurred, its definition does not depend upon what follows, such as station house booking. See United States v. Brunson, 549 F.2d 348, 357 (5th Cir.), cert. denied, 434 U.S. 842, 98 S.Ct. 140, 54 L.Ed.2d 107 (1977) (citation omitted).
 
 
 34
 From the foregoing, it is clear that the district court in this case incorrectly believed that to be actionable Posr's arrest had to be formal and accompanied by a detention pending arraignment. If to a reasonable observer, either Holihan or Doherty or both, upon physical contact with Posr, acted with an unreasonable level of intrusion given the totality of the circumstances in restraining Posr's freedom of movement to the point where he did not feel free to leave, than an arrest could be found.
 
 
 35
 The issue of precisely when an arrest takes place is a question of fact. See Sibron v. New York, 392 U.S. 40, 67, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968) (an arrest occurred when policeman "seized" the suspect and curtailed his movement by grabbing his collar). Here, there was evidence presented from which the jury could have found that Holihan, before Doherty arrived to assist him, had arrested Posr. At their initial altercation, according to plaintiff, Holihan took physical control of Posr and "slammed" him against a wall while exclaiming "assaulting a police officer, you are dead." This was sufficient for a jury to find that Holihan had "seized" Posr, in that Posr did not feel free to leave, in a manner that was unreasonably intrusive under the circumstances. The district court's second ground for dismissing the false arrest claim against Holihan was based on its belief that Holihan in fact acted with probable cause. We think that in making this finding, the district judge improperly invaded the province of the jury. It was for the jury to decide whether Posr had acted unlawfully, thereby supplying the necessary probable cause to Holihan, or as Posr claimed, Holihan attacked him without provocation.
 
 
 36
 The district court's third reason for setting aside the false arrest verdict as to Holihan was based upon the jury's exoneration of Doherty. This, in the court's view, rendered the Holihan verdict fatally inconsistent. We reject this reason as well. The jury could easily have found that Holihan had "slammed" Posr up against the wall and restrained his movement, thereby effecting an arrest without probable cause, even before Doherty arrived to assist Holihan. At the same time, it could have found that Doherty, arriving at the scene seconds later and seeing Posr in Holihan's grasp, reasonably believed probable cause existed to arrest Posr either because of something Posr was then doing or simply upon an incorrect assumption that Holihan had probable cause. In such circumstances, it would not have been inconsistent for the jury to have found liability by concluding that Holihan, but not Doherty, was without probable cause.
 
 
 37
 While the district court's judgment n.o.v. setting aside the arrest verdict against Holihan for false arrest cannot stand, we are also not convinced that the verdict should be simply reinstated. At trial, neither the parties nor the court focused on the fact that Holihan may have arrested Posr prior to, and independently of, Doherty. The plaintiff made no such argument to the jury and requested no instruction that the jury could find an arrest purely attributable to Holihan, yet nothing in the charge precluded such a finding either. Indeed, in such circumstances, where the point argued on appeal was largely ignored below, we might well be justified in concluding that plaintiff had waived it. Yet, we are reluctant to affirm an order setting aside a jury verdict that finds support in the evidence.
 
 
 38
 Under the circumstances, and bearing in mind that, for reasons to be discussed, the malicious prosecution claim must be retried, we believe the wiser course is to remand the false arrest claim against Holihan to the district court for retrial as well. We note, however, that by its excessive force verdict, the jury has necessarily found Holihan's level of intrusion to be unreasonable under the circumstances of his encounter with Posr, so that as a practical matter to warrant an arrest finding by the jury the only additional issue left to be determined is whether Posr reasonably believed he was free to leave.
 
 
 39
 In ordering a new trial on the false arrest claim against Holihan, we note that, if the jury finds that Holihan effected an arrest independently of Doherty, only nominal compensatory damages would be warranted for the brief interval before Doherty himself effected an arrest of Posr, since Posr's detention thereafter was supported by probable cause. On the other hand, a finding of liability as to Holihan could sustain an award of punitive damages against that officer.
 
 C. Malicious Prosecution
 
 40
 Posr argues that the district court erred when, in response to a question from the jury during its deliberation, it instructed that if the jury found probable cause supporting any of the three charges of disorderly conduct, resisting arrest and assault lodged against Posr, no liability for malicious prosecution could be found as to any of the charges filed. We agree with Posr and conclude that the malicious prosecution claims must be returned to the district court for retrial.
 
 
 41
 In order to prove either a § 1983 or state law claim of malicious prosecution, plaintiff must establish that: "(1) the defendant either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted with actual malice." Russo v. New York, 672 F.2d 1014, 1018 (2d Cir.1982) (quoting Martin v. City of Albany, 42 N.Y.2d 13, 16, 396 N.Y.S.2d 612, 614, 364 N.E.2d 1304, 1306 (1977)), modified on other grounds, 721 F.2d 410 (2d Cir.1983), quoted in Janetka v. Dabe, 892 F.2d 187, 189 (2d Cir.1989); see also Broughton v. State, 37 N.Y.2d at 457, 373 N.Y.S.2d at 94, 335 N.E.2d at 318.
 
 
 42
 In Janetka v. Dabe, relied on by Posr, we held that where defendant was charged and convicted of disorderly conduct and charged but acquitted of resisting arrest, and he sued later for malicious prosecution, the unfavorable termination on the disorderly conduct charge did not preclude a finding of liability for maliciously prosecuting the resisting arrest charge. We concluded that the charges arose out of distinct facts and should be analyzed separately. While not precisely on point here, where the issue is whether the officers had probable cause to commence proceedings against Posr, not with whether the charges were terminated in plaintiff's favor, Janetka is useful in highlighting the need to separately analyze the charges claimed to have been maliciously prosecuted.
 
 
 43
 When the jury in this case asked whether a probable cause finding as to one of the charges would amount to a finding for all three, we can assume that they were willing to find probable cause on one of the charges, but not the other two. The jury could have concluded, based on their verdict against Doherty and Holihan for excessive force, that Doherty had probable cause to charge Posr with disorderly conduct but not with resisting arrest or assault.
 
 
 44
 As disorderly conduct is a lesser charge than resisting arrest and assaulting an officer, analogizing from Janetka, we should not allow a finding of probable cause on this charge to foreclose a malicious prosecution cause of action on charges requiring different, and more culpable, behavior. If the rule were the one followed by the district court, an officer with probable cause as to a lesser offense could tack on more serious, unfounded charges which would support a high bail or a lengthy detention, knowing that the probable cause on the lesser offense would insulate him from liability for malicious prosecution on the other offenses.
 
 
 45
 Accordingly, we find that Posr is entitled to a new trial on the malicious prosecution charges against Doherty. Since we cannot know which charge or charges the jury may have found to have lacked probable cause, the claims as to all three charges of disorderly conduct, assault and resisting arrest must be retried.
 
 CONCLUSION
 
 46
 We affirm the district court's denial of a judgment n.o.v. in defendant's favor on the excessive force claims. We reverse its grant of a judgment n.o.v. in Holihan's favor on the false arrest claim together with the malicious prosecution claim against Doherty and order a new trial as to these claims.
 
 
 47
 Affirmed in part; reversed in part and remanded