Harry ZIRLIN, Plaintiff,

v.

**THE VILLAGE OF SCARSDALE, The Village of Scarsdale Police Department, the Village of Scarsdale Chief of Police John A Brogan, Sergeant David A. Pobereskin, Sergeant Peter Godshall, Police Officer Robert Raysor, Police Officer Steven Zappolo and Village of Scarsdale Police Officer John Does # 1–4. Defendants.**

No. 03CIV.9903(CLB).

United States District Court,
S.D. New York.

March 31, 2005.

Bruce E. Menken, Harry Zirlin Esq., Beranbaum, Menken & Ben–Asher, LLP, New York, NY, for Plaintiff.

Howard T. Cole, Law Office of Thomas J. Leonard, White Plains, NY, for Defendants.

### Memorandum and Order

BRIEANT, District Judge.

By motion filed in this civil rights action on February 23, 2005 (Doc. # 34), Plaintiff Harry Zirlin moves, following an adverse jury verdict, for Judgment as a Matter of Law under Fed.R.Civ.P. 50(b), or in the alternative for a new trial under Fed. R.Civ.P. 59(a). Opposition papers were filed on March 10, 2005.

The following facts, viewed most favorably to the jury's verdict, were developed in the course of a two day jury trial in which three police officer defendants, Plaintiff and his psychiatrist, all testified. The issues submitted to and answered by the jury by Special Interrogatory, were whether Plaintiff was seized by the police, whether the seizure was reasonable, whether he was arrested without probable cause, and whether unreasonable force was used. It was Defendants' position they conducted a valid Terry stop; that they did not arrest Plaintiff, nor did they use unreasonable force. The jury agreed with Defendants' position.

■ According to the testimony at trial, viewed, as it must be, most favorably to the verdict, the relevant events all took place in the woods adjacent to Heathcote Bypass in Scarsdale, New York within a span of no more than three minutes and five seconds between the arrival of the officers at the scene, by automobile, the stop and later release of Mr. Zirlin, and the return on foot of all participants from the woods to the Bypass.

Plaintiff, Mr. Harry Zirlin, age 51 at the time of trial, resides in Scarsdale, New York. He is an attorney specializing in corporate law, with a prestigious New York law firm. He is the paradigm of a reputable citizen. In addition to his work as a practicing lawyer, Mr. Zirlin is a recognized authority who has studied, lectured and published concerning Coleoptera (beetles) and related matters. On the fateful morning of December 21, 2002, which was a fine warm day with no snow on the ground, Mr. Zirlin left his home and walked about four or five minutes to the "Heathcote Bypass" in Scarsdale.

As its name implies, the Heathcote Bypass is a traffic diverting road between Palmer Avenue and Wilmot Road, constructed on the abandoned right of way of the New York, Westchester and Boston Railway, which once ran from New York City to White Plains. There are no houses

fronting on the Bypass. The only structure on it is the Village of Scarsdale Sanitation Facility (Transfer Station). The area along the bypass is wooded (Popham's Woods), and extends to the back of residential parcels on parallel streets and the Fenway Country Club Golf Course.

Mr. Zirlin's purpose on entering the Bypass on foot, was to look in the woods for a specific beetle specimen, found in dead trees or tree stumps. In aid of this purpose, he was carrying a hand bag with plastic ziploc bags and other beetle collecting paraphernalia and a pocket knife with a five inch blade to pry specimens from the deadwood. He was dressed in a coat, shirt and jeans. On December 21, 2002, while operating their three separate radio motor patrol cars (RMP) each Defendant, Sergeant David Pobereskin, and Officers Steven Zappolo and Robert Raysor heard on the police radio a direction to go to Heathcote Bypass to investigate a civilian report of a man in the woods carrying a knife in his hand. That report had been telephoned in to the police desk by Mr. Roger Lowden, a civilian employee of the Village of Scarsdale Sanitation Department (Transfer Station) the only structure located on the Bypass, who had made the call because a civilian woman motorist in a silver or brown Toyota had stopped there and asked him to do so. All three RMPs converged on the Sanitation Department where they found the woman, at her automobile, in the street with Mr. Lowden.

The officers, in the haste of the moment, failed to record the woman's license plate or to check her identification. Instead, they told her to await their return from apprehending the armed man in the woods. She did not wait around. However, the officers had the opportunity to speak with her, observe her, and assess her reliability. Sergeant Pobereskin did so. To characterize her information as an "anonymous tip", as Plaintiff now does is not a fair description.

Defendant Sergeant David Pobereskin was the first officer to arrive at the scene, at 10:19:33 A.M. He spoke with the woman and with Mr. Lowden. The woman told Pobereskin and Lowden that she had seen a man with a knife in his hand walking on the Heathcote Bypass. She then pointed into the woods, said "There he is." and she pointed at Zirlin.

The officers all ran into the woods. When they came within "50 or 75 feet" (Pobereskin, Tr. at 141), Raysor called out and asked the man to come towards them (a distance of 50 feet) which he did. At 40 feet, two officers drew their service firearms. Raysor directed the man to remove his jacket, which he did, and had him turn around. As Mr. Zirlin came closer, he was ordered to drop to the ground. Pobereskin asked him if he had a knife. He answered that he did. Once he was on the ground, he was handcuffed face down, and the guns were put away. The knife was found open, sticking partly out of the bag, and was seized by Pobereskin, while Raysor patted him down for possible weapons.

Then for the first time, Defendants engaged Mr. Zirlin in conversation, and then, for the first time, except for responding affirmatively to the question of whether he had a knife, Zirlin spoke.

Pobereskin asked what he was doing, and Zirlin explained he was collecting beetles and needed the knife to "peel bark off trees and overturn rocks, etc." (Tr. at 145) At that point, concluding that Zirlin's statement "made some sense" and was corroborated by dirt found on the knife, Defendants "unhandcuffed" Plaintiff, released him and offered him a ride home. All parties walked out of the woods and, when Sgt. Godshall arrived at 10:23:30

A.M., were standing on the shoulder of the Heathcote Bypass.[1]

At the time, the police were aware of recent threats of violence arising out of an employee altercation at the Village Sanitation Department.

On February 9, 2005, a jury, after deliberation, decided that Mr. Zirlin had been seized by the Defendant police officers, but decided that this seizure had been reasonable. The jury decided further that Mr. Zirlin had not been arrested, and that the Defendants had not used excessive force in their interactions with Mr. Zirlin.

Mr. Zirlin now argues that the jury verdict is unsupportable as a matter of law, that the case should not have been submitted to the jury at all, except with respect to damages, and that the issue of whether Mr. Zirlin's seizure was reasonable was an issue of law for the Court. Mr. Zirlin argues further that his detention was so intrusive that, as a matter of law, it constituted an arrest unsupported by probable cause, and that no fair minded juror could have held that the Defendants' use of force was reasonable under the circumstances. Mr. Zirlin also argues that he is entitled to a new trial because the Defendant police officers were allowed to testify as to the ultimate issues, that the Court's "Terry Stop" jury instruction was incorrect, and that the Court failed to give certain requested jury charges.

 The right to trial by jury is a fundamental Constitutional right, preserved by the Seventh Amendment to the United States Constitution. A person is entitled to trial by jury in all cases in which money damages are sought and legal rights are at stake. *See Teamsters v.*

*Terry,* 494 U.S. 558, 565, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990). While this right is important and must be preserved, it can be waived by the parties. The Plaintiff's Complaint under 42 U.S.C. § 1983 in this case requested a trial by jury. Under Fed.R.Civ.P. 38(b), a party may specify the issues to be tried to a jury. Failure to do so is deemed a demand to submit all triable issues to the jury. These issues include both the Plaintiff's claims and the Defendants' potential defenses. The jury's function in deciding all issues of fact must not be abrogated by a court except under limited and most serious circumstances.

 Under Fed.R.Civ.P. 50(b), Judgment as a Matter of Law is appropriate only when, viewing the evidence most favorably to, and drawing all reasonable inferences in favor of the non-moving party, insufficient evidence exists to support the jury verdict. *See Fabri v. United Techs. Int'l, Inc.,* 387 F.3d 109, 119 (2nd Cir. 2004). This means that "such a complete absence of evidence [existed] supporting the verdict that the jury's findings could only have been the result of sheer surmise or conjecture, or... [there is] such an overwhelming amount of evidence in favor of the movant that reasonable and fairminded [jurors] could not arrive at a verdict against him." *See Phillips v. Bowen,* 278 F.3d 103, 109 (2nd Cir.2002). All evidence favorable to the moving party that the jury is not required to believe must be disregarded. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 151, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). As our Court of Appeals has recognized:

> [I]n most trials, and especially in one where participants are giving their ac-

1. The last officer to arrive, Zappolo, arrived at the scene at 10:20:25 A.M. (Tr. at 128). Thereafter, all three officers entered the woods. Elapsed time between Zappolo's ar- rival and Sgt. Godshall's arrival, when they left the woods is three minutes and five seconds.

count of events occurring rapidly and in a highly charged atmosphere, the jurors are not required to accept the entirety of either side's account, but are free to accept bits of testimony from several witnesses and to make reasonable inferences from whatever testimony they credit.

*See Haywood v. Koehler,* 78 F.3d 101, 105 (2nd Cir.1996).

 Mr. Zirlin argues that the Court should not have submitted the liability issue to the jury. He asserts that the issues of whether he was seized and the seizure's reasonableness were questions of law for the Court. He cites Chief Judge Walker's concurring opinion from the denial of rehearing *en banc* in *Brown v. City of Oneonta,* 235 F.3d 769, 776 (2nd Cir.2000) as support for his argument that "It is also settled if a seizure does occur, whether that seizure was reasonable is also a question of law for the Court." In this case, submitting to the jury the issue of whether Plaintiff was seized was at least no more than harmless error, because the jury found, in accordance with a valid instruction in the Court's charge, that he was seized. Plaintiff misunderstands *Oneonta* as it applies to the issue of the seizure's reasonableness. The issue of law decided in that case is not whether the seizure itself was reasonable, but whether a reasonable person would have felt free to leave (i.e. whether the Plaintiff was seized). *See Oneonta,* 235 F.3d at 776 n. 2. Judge Calabresi, according to Chief Judge Walker's concurring opinion in *Oneonta,* observed that:

Our circuit's Fourth Amendment law concerning whether a stop *has occurred* needs to be clarified. Judge Calabresi maintains that it is unsettled whether the reasonableness determination that is, *deciding whether a reasonable person would have felt free to leave-*is a question of fact or one of law...Because the seizure determination is a question of law, it follows *a fortiori* that ascertaining reasonableness is also a question of law. *id.*

*Emphasis added.*

 The "reasonableness determination" which the Court must make is not whether the seizure itself was reasonable, but whether a seizure occurred at all. Deciding whether a reasonable person would have felt free to leave is no different than deciding whether the person was seized. In this case, Mr. Zirlin was seized, and the jury so found, creating no basis for granting the motion.

Traditionally, the Supreme Court has recognized the jury's function in deciding when law enforcement activity ceases to be lawful and intrudes upon a Constitutional right. *See Sibron v. New York,* 392 U.S. 40, 67, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (it is a question of fact as to when an arrest occurs).[2] The circumstances surrounding an arrest, which is an extreme form of seizure, present questions of fact for the jury. Those same facts are considered in deciding whether a seizure was reasonable. The only difference separating a reasonable investigatory stop and an arrest supported by probable cause is one of degree. *See Griffin v. Wisconsin,* 483 U.S. 868, 878 n. 4, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). The Plaintiff presents

---

**2.** *Sibron* is still good law, and only the Supreme Court itself may tell us otherwise. *Sibron* has been cited favorably by our Court of Appeals. See *Posr v. Doherty,* 944 F.2d 91, 99 (2nd Cir.1991). ("The issue of precisely when an arrest takes place is a question of fact.")

This holding was reaffirmed in both *United States v. Tehrani,* 49 F.3d 54, 59 (2nd Cir. 1995), and in *Oneonta,* 235 F.3d at 776 n. 2 ("[t]he question of when an investigative stop ripens into an arrest is for the finder of fact.").

no authority or principled reason for the Court to conclude that the issue of a seizure's reasonableness in the context of a jury trial is a question of law, which must be taken from the jury. It was proper for the Court to submit this question to the properly instructed jury, along with all other elements of the claims pleaded, and the Court should not substitute its views for that of the jury. The Constitutional right to a jury trial exists to protect Defendants as well as Plaintiffs.

 Plaintiff's argument that insufficient evidence existed for the jury to find that the seizure was reasonable lacks merit. A reasonable jury could conclude, based upon the totality of the knowledge of the police at the time of their momentary and sudden encounter with Plaintiff, including information that an altercation involving threats of violence had occurred recently at the nearby Sanitation Department, led them to believe, reasonably, that they were entering a potentially hostile and dangerous situation. They were unaware of Mr. Zirlin's identity or intentions. They knew only that an individual had been seen with a knife on or near the street in Scarsdale. Reasonable suspicion comprises the entire surrounding series of events leading up to a stop or seizure. *See United States v. Lifshitz,* 369 F.3d 173, 188 (2nd Cir.2004). The degree of suspicion needed to justify a "Terry Stop" is considerably less than a preponderance of the credible evidence. *See United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

It is not a foregone conclusion, as Plaintiff argues, that the Defendants could only infer that Mr. Zirlin possessed the knife for a lawful purpose. The Defendants did not know who he was or why he had an open five inch knife in his hand. They were responding to a citizen report of an armed suspicious man. Threats of violent,

dangerous crimes had been made in the locality, in the recent past. The officers knew of these threats. This information, at the time of the incident in this case, was not stale as a matter of law. This case is unlike *Diamondstone v. Macaluso,* 148 F.3d 113 (2nd Cir.1998), in which the relevant information was several months old. In this case, threats had been made in the preceding days or weeks, and the Defendants were justified in considering this information. Also, this case is unlike *Florida v. J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), and *United States v. Colon,* 250 F.3d 130 (2nd Cir.2001), in that it did not involve an anonymous tip. At least one of the Defendants spoke directly to the woman informant, was in a position to determine her reliability when she pointed out the Defendant, and could have copied her license plate had he thought to do so. He decided reasonably to act based upon her information. There is the complete absence of any evidence that the Defendants fabricated their version of the events, in order to conjure reasonable suspicion, and the trial jury, by its verdict, is deemed to have resolved all issues of credibility in their favor.

 Plaintiff now argues that factual inconsistencies exist between the Police Department's recorded messages, Defendant Pobereskin's testimony of his face-to-face interaction with the female eyewitness and Mr. Zirlin's testimony. If so, it is the jury's task, not this Court's, to determine where the truth lies. The jury heard the witnesses, observed their demeanor and made its decision. No valid reason exists to overturn the jury's verdict based upon disputed factual contentions, all of which are deemed merged in the verdict.

 An armed individual's presence near an area in which the police were aware of threats of violence is simply not "inchoate and unparticularized suspicion[s]

or hunch[es] of criminal activity." That it is not unlawful, in itself, to carry an open knife in a public place in New York State is not dispositive. Reasonable suspicion is not based upon whether a particular activity is "innocent" or "guilty," but upon the degree of suspicion that attaches to an activity, *see Sokolow,* 490 U.S. at 8, 109 S.Ct. 1581 *(citing Illinois v. Gates,* 462 U.S. 213, 243–44 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)), and a series of innocent events can be taken together to warrant further investigation. *See Terry,* 392 U.S. at 22, 88 S.Ct. 1868. When combined with other facts known to the Defendants at the time of the Terry Stop, a jury could conclude that it was reasonable for the Defendants to have suspected Mr. Zirlin of criminal activity. Hindsight is of course perfect, but the Defendants cannot be judged on what they know now or learned as a result of the investigatory stop. In the course of this brief interaction, the Defendants responded rapidly to a perceived threat. They took steps which they believed reasonable to protect themselves as well as Mr. Zirlin.

■■■■■ Plaintiff argues next that his seizure was so intrusive that it constituted an arrest. This issue was submitted properly to the jury. Handcuffs and display of police issued sidearms do not alone or together transform automatically what was otherwise a valid investigatory stop into an arrest. *United States v. Newton,* 369 F.3d 659, 674 (2nd Cir.2004). After considering the evidence, the jury determined that Mr. Zirlin had not been arrested. The Court is not able to conclude that this verdict is unsupportable as a matter of law.

■■■■■ Mr. Zirlin also argues against the jury verdict that the amount of force used by the Defendants was excessive as a matter of law. The use of force is evaluated for reasonableness, and must be determined based upon the perspective of a reasonable officer at the scene, not upon 20/20 hindsight. *See Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). As the Supreme Court has stated, "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." The Court's jury instruction stated specifically that "The reasonableness of the force used is judged from the prospective of a reasonable police officer at the scene of the arrest and *takes into account all of the factors previously mentioned by the Court."* See Tr. at 276–77. (Emphasis added.). This statement was made only moments after the Court stated the various *Graham* factors. The Court's instruction was clear. The jury was to consider whether the Defendants' use of force was reasonable, based upon all of the facts and circumstances known by the Defendants at the time of the incident. The jury decided that this use of force was reasonable.

■■■■ The Supreme Court has recently confirmed that police are entitled to use overwhelming force in order to take command of a situation that they reasonably believe to be high risk. In *Muehler v. Mena,* —— U.S. ——, 125 S.Ct. 1465, —— L.Ed2d —— (2005), a heavily armed SWAT team of eight officers executed a search warrant at 7 A.M. at a dwelling house. Only one person, a 5–foot–2–inch young woman, was in the house at the time of the raid, and she was asleep. The Supreme Court concluded as a matter of law that the SWAT team's initial actions were insufficient to support a jury verdict awarding damages for excessive force. The Court noted:

At the time they [the SWAT team] first encountered [Respondent], the officers had no way of knowing her relation to Romero, whether she was affiliated with the West Side Locos, or whether she

had any weapons on her person. Further, the officers needed to use overwhelming force to immediately take command of the situation; by handcuffing [Respondent] they could more quickly secure her room and join the other officers. It would be unreasonable to expect officers, who are entering what they believe to be a high risk situation, to spend the time necessary to determine whether [Respondent] was a threat before they handcuffed her.[3]

*See Mena*, 125 S.Ct. at 1476 (Stevens, J. *concurring*). See also *Michigan v. Summers*, 452 U.S. 692, 702, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). Mr. Zirlin now argues as a matter of law that the Defendants should have asked him his name and his purpose in the woods before taking action to secure the situation. The jury was entitled to find that the Defendants believed that they were entering a potentially high risk situation, and it would be similarly unreasonable for this Court to require them to determine whether Plaintiff was in fact a threat *before* they were entitled to take command of the situation. Afterwards would be too late. Neither Supreme Court decisions nor the realities of police work, require such actions. Potentially, Zirlin could have been an armed and dangerous disgruntled sanitation worker, rather than the distinguished entomologist he turned out to be. Police do not need to risk a knifing or worse to find out.

The jury was entitled to believe the Defendants when they explained why they took the actions which they did. This Court concludes that sufficient evidence exists to support the Jury's conclusion that Defendants acted reasonably.

▮▮▮▮▮ Mr. Zirlin moves also for a new trial. He argues first that it was error to allow the Defendants to testify as to whether they believed they had done anything wrong. The Defendants were asked whether, in their own opinions, they had done anything wrong. This testimony is permissible under F.R.Evid. 701. Simply because it was testimony about an "ultimate issue" does not invalidate this testimony under F.R.Evid. 704. It was otherwise admissible, especially where punitive damages are sought, and the Defendants were not presented as testifying as expert witnesses. The Plaintiff also inquired into whether the Defendants had knowledge of the Fourth Amendment and what probable cause and reasonable suspicion entail. The Court's refusal to permit this line of testimony did not prejudice the Plaintiff. The Plaintiff's argument that the Court signaled that "the facts they [Defendants] had used in assessing whether to make the stop…[were] irrelevant" lacks merit. The entire case, both Plaintiff's and Defendants', focused upon the facts that the Defendants had considered in making their stop. The Plaintiff certainly explored those facts adequately on the trial record.

▮▮▮▮▮ Plaintiff states next that the Court's "Terry Stop" jury instruction was erroneous. The Court's instruction stated that an officer must have reason to believe that he or she is dealing with an "armed or dangerous individual." Plaintiff contends that this instruction should have read "armed and dangerous." No contemporaneous exception was taken to the instruction. A jury verdict will be overturned because of a jury instruction only if the instructions, considered as a whole, prejudiced the Plaintiff. A jury instruction is

---

**3.** The woman in *Mena* remained handcuffed for two to three hours, compared with about one minute in Zirlin's case.

erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury as to the law. *United States v. Pimentel,* 346 F.3d 285, 301–02 (2nd Cir.2003). An error in jury instructions must not only contravene an established rule of law, it must also be so serious and flagrant that it undermines the integrity of the trial. *See Innomed Labs, LLC v. ALZA Corp.,* 368 F.3d 148, 155 (2nd Cir.2004). The Defendants' evidence all indicates that they believed objectively that they were dealing with a dangerous individual and one armed with a knife. It is implausible under the facts of this case that a reasonable officer could have believed that Mr. Zirlin was armed without concluding that he was dangerous, or vice-versa. An unknown civilian in the woods who is armed, in a situation such as the one present in this case, would be considered at least potentially dangerous. Under the facts of this case, the Court's instruction was harmless error, if indeed it was error at all. In logic, it is possible to be dangerous without being armed.

■ Finally, Plaintiff argues that the Court refused wrongfully to include certain requested charges in the jury instructions. The Plaintiff must show that this failure caused him prejudice. These requested charges either were included in substance, or are more appropriate to be given as arguments in summation than in the course of jury instructions. The Court charged the jury on the required elements of a reasonable seizure, a Terry Stop, and excessive force. Policy statements are not jury instructions. *See Pl's. Request No. 20* ("That the Fourth Amendment is in large means designed to prevent arbitrary intrusions by the police."); *No. 24* ("That a pat-down is a serious intrusion upon the sanctity of the person and is not a matter to be taken lightly."); *No. 42* ("That the relaxation of the fundamental requirements of

probable cause would leave law-abiding citizens (as Plaintiff undeniably is) at the mercy of the police.") The Court's refusal to include the enumerated instructions did not prejudice the Plaintiff, and his request for a new trial is denied.

### Conclusion

All arguments made have been considered. The jury verdict was fair and supported by the record. Plaintiff's motion is denied in all respects.

SO ORDERED.